# CALIFORNIA INSURANCE COMPANY *v.* UNION COMPRESS COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 1051. Submitted October 30, 1889. — Decided March 3, 1890.

The defendant, a fire insurance company, issued a policy of insurance to the plaintiff, a cotton compress company, on "cotton in bales, held by them in trust or on commission," and situated in specified places. The cotton was destroyed by fire in those places. The plaintiff received cotton for compression, and issued receipts to the depositors, which said "not responsible for any loss by fire." The holders of the receipts exchanged them with one or the other of two railroad companies for bills of lading of the cotton, which exempted the carrier from liability for loss or damage by fire. On issuing the bills of lading the railroad companies notified the plaintiff of their issue, and ordered it to compress the cotton. It was burned while in the hands of the plaintiff for compression, after the bills of lading were issued. In a suit to recover on the policy; *Held,*

(1) It was competent for the plaintiff to prove, at the trial, that it took out the policy for the benefit of the railroad companies, and in pursuance of an agreement between it and those companies that it should do so; also, that by like agreement, it collected from the railroad companies a specified sum for all cotton compressed by it, as covering the compression, the loading, and the cost of insuring the cotton; also, that such customs of business were known to the defendant when the policy was issued, and that an officer of the plaintiff had stated to the agents of the defendant, when the policy was applied for, that it was intended to cover the interests of the plaintiff and of the railroad companies; also, what claims had been made on the railroad companies, by owners of cotton burned, to recover its value;

(2) The railroad companies were beneficiaries under the policy, because they had an insurable interest in the cotton, and to that extent were its owners, and it was held in trust for them by the plaintiff;

(3) It was lawful for the plaintiff to insure in its own name goods held in trust by it, and it can recover for their entire value, holding

the excess over its own interest in them for the benefit of those who entrusted the goods to it;

(4) The issuing of the bills of lading for the cotton did not effect such a change in the possession of the cotton as to avoid the policy, under a provision in it making it void, " if any change take place in the possession of the subject of insurance;"

(5) The plaintiff can recover for losses caused by the negligence of the railroad companies in improperly exposing the cotton to danger. from fire.

(6) The exception " not responsible for any loss by fire" in the receipts given by the plaintiff, and the clause in the bills of lading exempting the railroad companies from liability for loss or damage by fire, did not free the latter from responsibility for damages occasioned by their own negligence or that of their employés;

(7) The ruling, that a common carrier may insure himself against loss proceeding from the negligence of his own servants, made in *Phœnix Insurance Co.* v. *Erie Transportation Co.*, 117 U. S. 312, 324, affirmed.

(8) The words in the policy, " direct loss or damage by fire," explained;

(9) The mere fact of the dwelling by the court below, with emphasis, in its charge to the jury, on facts which seemed to it of controlling importance, and expressing its opinion as to the bearing of those facts on the question of negligence, is immaterial, if it left the issue to the jury;

(10) Under a clause in the policy, that it " shall not apply to or cover any cotton which may at the time of loss be covered in whole or part by a marine policy," such clause is not operative unless it amounts to double insurance, which can exist only in the case of risks on the same interest in property and in favor of the same person;

(11) The right of action of the plaintiff accrued on the occurring of the loss, and did not require that the railroad companies should have actually paid damages for the loss of the cotton.

THIS was an action at law, brought in the Circuit Court of the United States for the Eastern District of Arkansas, by the Union Compress Company, an Arkansas corporation, against the California Insurance Company, of San Francisco, a California corporation, to recover on a policy of insurance against fire, issued by the latter company to the former company on the 2d of November, 1887.

By the policy the California company insured the Compress Company, for the term of thirty days from November 2, 1887, at noon, to December 2, 1887, at noon, " against all direct

loss or damage by fire, except as hereinafter provided, to an amount not exceeding ten thousand dollars, to the following-described property while located and contained as described herein, and not elsewhere, to wit: *Form of cotton policy.* $10,000 on cotton, in bales, their own or held by them in trust or on commission, while contained in the frame shed 112 to 122, inclusive, and in back shed and yard 115 to 123, inclusive, North Main Street, and on platforms adjoining and in street immediately between the sheds, Sanborn's map of Little Rock, Arkansas; and it is agreed and understood to be a condition of this insurance that this policy shall not apply to or cover any cotton which may at the time of loss be covered in whole or part by a marine policy; and it is further agreed to be a condition of this policy that only actual payment by bank check or otherwise for cotton purchased shall constitute a delivery of cotton from the seller to the buyer; and it is further agreed that this company shall be liable for only such proportion of the whole loss as the sum hereby insured bears to the cash value of the whole property hereby insured at the time of fire; and it is further agreed that tickets, checks, or receipts delivered to bearer shall not be considered as evidence of ownership. Other insurance permitted without notice until required. . . . In case of loss or damage to the property insured, it shall be optional with the company, in lieu of paying such loss or damage, to replace the articles lost or damaged with others of the same kind and quality. . . . This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void . . . if any change . . . take place in the . . . possession of the subject of insurance. . . . In case of any other insurance upon the property hereby insured, whether to the same party or upon the same interests therein or otherwise, whether valid or not, and whether prior or subsequent to the date of this policy, the insured shall be entitled to recover from this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, whether such other insurance be by specific or by general or floating policies, or by policies covering only in excess of specified loss; and it is

hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, or any part thereof subject to the conditions of average, this policy shall be subject to average in like manner. . . . If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment. . . . In case of loss on property held in trust or on commission, or if the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth" [in the proofs of loss] "together with their respective interests therein."

The complaint alleged that on the 14th of November, 1887, the plaintiff was engaged in the business of compressing cotton, which it received or held on its own account or on commission or in trust for others, at its warehouses and compress buildings and adjoining sheds and platforms situated at the foot of Main Street in the city of Little Rock, Arkansas; that it had on hand, at that date, about 2800 bales of cotton, delivered to it to be compressed and belonging to divers parties, the value of which equalled the sum total of the insurance thereon; and that such cotton, whether owned by the plaintiff or held by it on commission or in trust for others, was insured against loss or damage by fire in twenty-eight insurance companies, which were named, in the several amounts stated opposite their respective names, amounting in the aggregate to $142,500, which included the defendant for the sum of $10,000. It then set forth the issuing of the policy by the defendant to the plaintiff, a copy of which was annexed to the complaint, and that on the 14th of November, 1887, all the cotton in bales, contained on said premises and so insured, was destroyed by fire, "together with a large quantity of other cotton in possession of plaintiff at said place, which was not insured by plaintiff."

The complaint then proceeded as follows: "[That at the time that said cotton came to the possession of the plaintiff it

was engaged in the business of compressing cotton at its compress in the town of Argenta, opposite Little Rock, and on the north side of the Arkansas River, and that said cotton was deposited with the plaintiff for compression by various owners thereof, who delivered the same at the sheds and yards and adjacent grounds in the said city of Little Rock, as described in said policy, with directions that the same should be transported to said compress by the plaintiff or some carrier employed for that purpose by it, and that on the receipt of any bales of said cotton by said plaintiff it gave a receipt for the same to the owner thereof, and that, according to a custom known to said depositors, to the plaintiff, and to the St. Louis, Iron Mountain and Southern Railway Co. and the Missouri Pacific Railway Co., of which it was a part, and the Little Rock and Memphis Railroad Company, which were common carriers having and operating railroads of which both Argenta and Little Rock were stations, said owners transferred said receipts to either one or the other of said carriers and received from said carriers bills of lading for the transportation by said carriers of said cotton to various places to which said cotton was then and there shipped by said owners, with an agreement with said railway companies that said cotton should not be shipped until it had been compressed by the plaintiff. There was a standing and continuing agreement between said plaintiff and said railway companies that the plaintiff should proceed to compress said cotton and all cotton thus received and should insure the same, after notice of the execution of said bills of lading by said railway companies, against loss by fire during the time that said cotton should be in the hands of the plaintiff, for the purpose aforesaid, for a price averaging from sixty to sixty-five cents per bale, to be paid by said railway companies, respectively, when said cotton should be compressed and delivered to said railway companies on their cars at Argenta for transportation under said bills of lading, at which time said carriers should surrender to plaintiff the said receipts issued as aforesaid at the time that said cotton was deposited with the plaintiff for compression by the owners, as above stated; that all of said cotton was in the custody of plaintiff,

at the time of said loss, under and by virtue of said custom and agreement, and that it was lost by the negligence of the servants, agents, and employés of said railway companies, and that since said loss said St. Louis, Iron Mountain and Southern Railway Company has been sued in this court by two of said consignees for the value of part of said cotton above named, to wit, the York Manufacturing Company and Hazard & Chapin, and said railway company defended said actions on the ground that said loss was not occasioned by the negligence of said railway company or its servants and employés, and on a trial of said first-named cause it was adjudged by this court that said York Manufacturing Company and said Hazard & Chapin recover from said railway company the value of said cotton sued for as aforesaid, and that since said adjudication said railway company has paid said judgment and the value of a large part of the cotton for which it had issued bills of lading as aforesaid, and that several suits are now pending in this court against said Little Rock and Memphis Railroad Company, brought by the consignee of portions of said cotton, for the recovery of damages for the loss of said cotton by reason of the negligence of said railroad company, which said suits are now pending and undetermined. On said 14th day of November, 1887, the plaintiff had in its possession at its sheds and premises above mentioned, for purposes of compression, a large amount of cotton, to wit, over 3000 bales; that of this number 2700 bales of cotton were held by this plaintiff for the St. Louis, Iron Mountain and Southern Railway Company and the Little Rock & Memphis Railroad Company. By said contract and agreement between plaintiff and said railroads this plaintiff took out the policies of insurance above set out for the purpose of indemnifying this plaintiff against loss and liability, and the said railroad companies against loss and liability, by reason of the destruction of said cotton while it was being held by plaintiffs for purposes of compression. The St. Louis, Iron Mountain and Southern Railway has been adjudged as aforesaid to pay a large sum of money, to wit, $ —, and in addition has paid a still larger amount because of its liability for such loss, amounting in all up to this date to $72,209.58,

and has made demand therefor against the plaintiff for reimbursement of said losses.]" It also averred that the loss by fire on the cotton equalled the insurance on it, and that the plaintiff had performed all the conditions of the policy; and prayed judgment for $10,000, with interest.

The defendant moved to strike from the complaint the words "together with a large quantity of other cotton in possession of plaintiff, at said place, which was not insured by plaintiff," and also the foregoing part included in brackets. It also demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action; and also demurred separately to that part of it which is so included in brackets, on the ground that the facts therein stated did not tend to constitute a cause of action. The court overruled the said motion, and also the demurrer, and the defendant excepted to both of those rulings.

The defendant then filed its answer, admitting the issuing of the policy, and that at the fire one hundred and twelve bales of cotton belonging to one Hanger and held by the plaintiff in trust for Hanger, were burned, for the loss of which the insurance companies named in the complaint had paid the plaintiff $4826.59, in full satisfaction thereof, and of which sum the defendant paid its full portion of the loss. The answer denied the material allegations of the complaint, and averred that the greater portion of the cotton alleged to have been lost at the fire was received by the plaintiff from the owners thereof after the issuing of the policy; that the cotton burned was first delivered by its owners to the plaintiff, and the plaintiff gave to the owners receipts for it, which provided that the plaintiff should not be liable for the loss of it by fire; that afterwards, and after the policy was issued, the cotton was sold to various persons who became its owners, and the Missouri Pacific Railway Company, the Little Rock and Memphis Railroad Company, and the Little Rock, Mississippi River and Texas Railway Company, common carriers of cotton for hire, issued their bills of lading for the same to the purchasers, which provided that the carriers should not be liable for the loss thereof by fire, and at the same time such rail-

road companies took up the receipts issued by the plaintiff to the original owners and surrendered them to the plaintiff, whereby the possession of the cotton was changed, contrary to the provisions of the policy, without any consent of, notice to, or knowledge by the defendant; (7) that it was provided in the policy that it should not apply to or cover cotton which was at the time of loss covered in whole or in part by marine policies, and at that time 2172 bales of the cotton alleged to have been burned, and of the value of $101,973.73, were covered by marine policies theretofore issued to the respective owners of the cotton; (8) that after the railroads had issued their bills of lading for the cotton, and before and at the time of the fire, it was kept in a grossly negligent manner, in a dangerous public place, without being covered or sprinkled, and but a few feet from a railroad track, where locomotives of the Missouri Pacific and the St. Louis, Iron Mountain and Southern railroads, emitting sparks, were constantly passing, by which sparks the fire was kindled, and the cotton was destroyed by a fire which occurred in broad daylight, at about four o'clock P.M., and which fire those two railroad companies, by the use of ordinary care, could have extinguished by removing the bales first ignited, or by putting out the fire by water from the hydrants which were close by; and that none of the cotton was destroyed by the negligence of the Little Rock and Memphis Railroad Company or its employés.

The plaintiff demurred to certain paragraphs of the answer, and among them paragraphs 7 and 8, as not stating facts sufficient to constitute a defence. The court overruled such demurrer as to two of the paragraphs and sustained it as to paragraphs 7 and 8; to which latter ruling the defendant excepted. Thereupon the case was tried by a jury, which found a verdict for the plaintiff for $9491.96, on which a judgment was accordingly entered, to review which the defendant brought a writ of error.

The first four assignments of error on the part of the defendant related to the overruling of its motion to strike out part of the complaint, the overruling of its demurrer to the complaint and to part thereof, and the sustaining of the demurrer of the plaintiff to paragraphs 7 and 8 of the answer.

At the trial, the plaintiff offered evidence tending to prove that it was engaged in the business of compressing cotton at the town of Argenta, which was on the nerth bank of the Arkansas River directly opposite the city of Little Rock; that it received cotton for compression at Argenta and also at the premises described in the policy at Little Rock; that for cotton received at either place it issued receipts to the depositors, red receipts at Argenta and green receipts at Little Rock, a blank form of which, as it appears in the bill of exceptions, if filled out, would read thus: "Little Rock, Arkansas, Nov. 1, 1887. Received by the Union Compress Company. From John Smith. Account of John Doe. For compression. Storage after ten days will be charged. Not responsible for any loss by fire. Marks X, Y, Z. No. bales of cotton, 65. Richard Roe, Superintendent;" that the holders of such receipts took them to the freight offices of one or the other of the two railway companies, the Missouri Pacific Railway Company, and the Little Rock and Memphis Railroad Company, and those companies issued bills of lading for cotton, which specified the number of bales and the marks, agreeing to deliver the cotton at an address specified in the bill of lading; that the same bills of lading covered cotton which was received by the plaintiff at Argenta and which actually was at Argenta, and cotton received at Little Rock and which actually was at Little Rock; that one form of bill of lading was issued by the Missouri Pacific Railway Company and two forms by the Little Rock and Memphis Railroad Company; that it was claimed that each form covered a portion of the cotton burned; that each form, by its terms, exempted the carrier from liability for loss or damage by fire; and that, as the cotton might pass through the custody of several carriers before reaching its destination, each of them provided that the legal remedy for loss or damage occurring in transit should be only against the particular carrier in whose custody the cotton actually might be at the time of the happening thereof. The Missouri Pacific Railway Company in its bills of lading reserved to itself the privilege of compressing all cotton signed for on the bill of lading. The Memphis and Little Rock Railroad Company did not re-

serve that privilege, but in one of its two forms, which was a through bill of lading to England, it stipulated for the benefit of any insurance that might have been effected on the goods. There were five of such foreign bills of lading, covering 158 bales of lost cotton. Bills of lading covering 1460 bales alleged to have been burned were, issued by the Missouri Pacific Railway Company. The loss claimed on behalf of the latter company was for 1463 bales. The bills of lading issued by the Memphis and Little Rock Railroad Company were for 992 bales, but the loss claimed was for 1211 bales. By the bills of lading issued by the Missouri Pacific Railway Company on the lost cotton, 884 bales were covered after the date of the policy; and by those issued by the Memphis and Little Rock Railroad Company 255 bales were covered after that date.

It also appeared by the bill of exceptions that, on the issuing of the bills of lading, the respective railroad companies notified the plaintiff of their issue, and ordered the cotton designated therein to be compressed at Argenta; that all of the cotton transported from Little Rock to Argenta was carried on the track and by the cars of the Missouri Pacific Railway Company; that the Little Rock and Memphis Railroad Company had no track and ran no cars near the premises described in the policy; that the plaintiff paid the Missouri Pacific Railway Company an agreed price for the transportation of the cotton from Little Rock to Argenta; and that the cotton was to be compressed after it arrived at Argenta, and was there to be loaded on the cars of such of the two railroad companies as its marks and the bills of lading called for, to be transported by them to its destination.

The bill of exceptions further stated that the plaintiff offered evidence tending to prove that 2670 bales of cotton, covered by said bills of lading, were burned at the fire in question, while in the hands of the plaintiff for compression, after the bills of lading were issued and at the place described in the policy.

The plaintiff also proved that in October and November, 1887, there was an accumulation of cotton at the premises described in the policy, owing to the fact that the Missouri Pacific Rail

way Company had not sufficient cars to transport the cotton to Argenta as fast as it was received; that the cotton-sheds were open sheds and were at the time of the fire full of cotton, which had no tarpaulin or other cover over it, and stood within three or four feet of the track of the Missouri Pacific Railway Company, over which locomotives and trains passed several times daily; that, after the sheds were full, the cotton was stored in the street, leaving a passage-way some four feet wide for foot passengers; that the two railroad companies had no control over the cotton while so stored, and could not obtain actual possession of it until the Missouri Pacific Railway Company transported it to Argenta for compression; but that that company could take it at any time across the river for compression.

The defendant offered in evidence the proof of loss furnished by the plaintiff to it, made out after the bringing of the suit, alleging the total destruction by fire of 2687 bales of cotton, in addition to what was known as the Hanger cotton, and that the 2687 bales were held by the plaintiff in trust or on commission, that is to say, to be compressed, and were the property of various persons, the plaintiff being interested in the same to the extent of its charges, and stating the names of the consignees and the number of bales and their value pertaining to each consignee, no allusion being made to any interest of the railroad companies.

(1) The plaintiff offered evidence tending to prove that the policy in suit was taken out by it for the benefit of the railroad companies named in the complaint, and in pursuance of agreements between the plaintiff and those companies by which the plaintiff agreed to take out such insurance. The defendant objected to such evidence, on the ground that it was incompetent and in contradiction of the terms of the policy. The objection was overruled, and the defendant excepted.

The plaintiff also offered evidence tending to prove that by agreement between it and the railroad companies it charged and collected from them 13 cents per 100 pounds for all cotton compressed by it, which charge was by agreement intended to cover and did cover the compression of the cotton, the loading

of it on the cars at Argenta, and the cost of insuring it for the benefit of the railroad companies. The defendant objected to the evidence on the ground that it was immaterial, irrelevant and incompetent, the objection was overruled, and the defendant excepted.

The plaintiff also offered evidence tending to prove that the contracts and customs of business before stated were well known to shippers and the defendant when the policy sued on was issued, it having been stated to the agents of the defendant, by an officer of the plaintiff, when the policy was applied for, that it was intended to cover the interests of the plaintiff and of the railroad companies. The defendant objected to this evidence, but the objection was overruled and the defendant excepted.

The plaintiff also offered evidence tending to prove that claims had been filed against the Missouri Pacific Railway Company by the owners of 1463 bales of cotton burned at the fire, of the claimed value of $72,735.58; that since the commencement of this suit that company had paid such claims to the amount of $65,000; and that the balance had been adjusted by that company and would be paid. The defendant objected to the evidence on the ground that it was immaterial, irrelevant and incompetent, but the objection was overruled and the defendant excepted.

The plaintiff further offered evidence tending to prove that claims had been filed against the Little Rock & Memphis Railroad Company by the owners of 1211 bales of cotton burned at the fire, of the claimed value of $57,529.55, no part of which has been paid by that company, though suits had been brought on several of the claims and were still pending. The defendant objected to the evidence on the ground that it was incompetent, irrelevant, and immaterial; but the court overruled the objection and the defendant excepted.

After the close of the evidence, the defendant requested the court to instruct the jury as follows: "1. The policy of insurance of the defendant on which this action is brought covered all goods in possession of the Union Compress Company at the place designated in the said policy, at the date when said pol-

icy was issued, which were held by the said Union Compress Company under warehouse receipts issued to the owners of said cotton by said company, and also all cotton subsequently and during the life of said policy so received by the Union Compress Company.  2. The policy in question insures the goods of the Union Compress Company at the place designated. It also insures the Union Compress Company to the extent of its liens upon or charges against all goods held by it during the life of the policy, not its own, but held by it in trust or on commission.  It also insures the interest of the owners of the legal title to such goods so held.  It does not insure any one else.  Any possible interest of any common carrier not an owner of the goods, or any of them, in the place designated, is not insured by said policy.  3. The jury are instructed to disregard all evidence in the case tending to show that the insurance in question was issued for the benefit of any railroad company not an owner of any of the goods destroyed by fire, for the value of which recovery is sought herein."  The court refused to give any of those three instructions and the defendant excepted to each refusal.

*Mr. E. W. McGraw* and *Mr. E. W. Kimball* for plaintiff in error.

I.  The beneficiaries under the policy are the owners of the cotton ; the possible interest of no common carrier is covered thereby ; the policy is not ambiguous, and parol testimony is inadmissible to aid in its interpretation.

The law of marine insurance affords a very unsafe guide to the determination of rights under a policy of fire insurance.

A party suing upon a marine policy, and imbibing his ideas of the law of representation and concealment solely from adjudications in fire cases, would meet with many embarrassments.  An adjuster who should attempt to adjust and settle a fire loss on the basis of the law adapted to marine insurance would commit grievous errors.

These contracts of insurance, generally designated as fire and marine, while they have some points in common, have a

different ancestry; the law as to each is peculiar to itself; the points in which the contracts and the construction of them differ are nearly as numerous as those in which they agree.

The term "on account of whom it may concern" is of American origin, originated in policies of marine insurance, and is still generally confined to such policies. In Massachusetts, and perhaps one or two other States, it has been to a limited extent engrafted on policies of fire insurance.

Marine insurance comes from the civil law, the rules of which to the present day enter into the construction of its policies.

Originally in England marine policies were frequently, if not commonly, issued in blank, leaving it to the person procuring the insurance to insert the name of such beneficiary as he pleased. When not in blank they were almost equally indefinite as to the identity of the assured. The issue of policies in blank is now prohibited there. The term "for account of whom it may concern" is yet a stranger to English policies. It is the brief American substitute for the lines of the Queen Anne policy above quoted, which lines were in themselves a declaration of the existing doctrine, that the person obtaining the insurance could fill in the name of the beneficiary at his leisure, and that it was a matter which in no way concerned the insurer. When this term was first inserted in a policy of marine insurance in this country it is not easy exactly to determine, nor is it very material. See *Davis* v. *Boardman*, 12 Mass. 80; *Graves* v. *Boston Marine Ins. Co.*, 2 Cranch, 419; *Lawrence* v. *Leber*, 2 Caines, 203; *Hodgson* v. *Marine Ins. Co.*, 5 Cranch, 100; *Seamans* v. *Loring*, 1 Mason, 127.

The business of fire insurance had its origin under the common law, in 1667, after the great fire in London, and from its inception was strictly a contract of indemnity. During the first seventy-nine years of its existence the courts of England upheld the validity of wager policies of marine insurance. While the statute prohibiting wager policies of marine insurance was passed in 1736, no such statute applicable to fire insurance was passed until 1774. Yet before that time Lord Chancellor King and Lord Chancellor Hardwicke had recorded

their opinions, that on a policy of fire insurance there could be no recovery without proof of interest. *Lynch* v. *Dalzell*, 4 Bro. P. C. 431. ed. Toml.; *Sadlers Co.* v. *Badcock*, 2 Atk. 554.

With this wide difference in the history and customs of marine and fire insurance it is not surprising to find in the adjudications concerning the latter, that the question "who was the assured" assumes a prominence that it does not attain under policies of marine insurance.

An insurance on "goods, their own or held by them in trust or on commission" is of American origin, and was an innovation on the accustomed manner of doing a fire insurance business. The form probably made its appearance in policies some years before it appears in the reports. See *Parks* v. *General Interest Assurance Co.*, 5 Pick. 34; *DeForest* v. *Fulton Fire Ins. Co.*, 1 Hall (N. Y.) 84.

Insurance in this form has invariably been held. to insure; first, the bailee to the extent of his liens or advances, and second, the *owner* of the goods. The varied interests in goods which may exist without property therein, have never been held covered by the form of insurance under consideration.

In this particular policy the words "their own" and the words "or on commission" may be eliminated as it is an established fact that the Union Compress Company neither owned any of the cotton burned or held any of it on commission. For all purposes of this case the insurance was upon cotton in bales held in trust by the Union Compress Co., at the place designated in the policy.

That the words "in trust" have not a technical meaning is admitted. The trust referred to is not of the kind usually treated of in works on Trusts and Trustees. The words, "held in trust by them" are defined as goods of which they had the care and custody, intrusted to them as representatives of others, and for which they are responsible *to the owner*: *Stillwell* v. *Staples*, 19 N. Y. 401; *Waring* v. *Indemnity Ins. Co.*, 45 N. Y. 606. See, also, *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 95 U. S. 543; *London & Northwestern Railway* v. *Glyn*, 1 El. & El. 652; *Robbins* v. *Fireman's Fund Ins. Co.*, 16 Blatchford, 122; *Siter* v. *Morrs*, 13 Penn. St. 218; *Lee* v.

*How. Fire Ins. Co.,* 11 Cush. 324 ; *Phœnix Ins. Co.* v. *Favorite,* 46 Illinois, 259 ; *Home Ins. Co.* v. *Favorite,* 46 Illinois, 263 ; *Beidelman* v. *Powell,* 10 Mo. App. 280 ; *Thomas* v. *Cummiskey,* 108 Penn. St. 354.

II. The policy is without ambiguity, and no evidence was admissible to prove that railroad companies, and not the owners of the cotton were intended as beneficiaries.

The subject matter of the insurance is definitely described. It was all the cotton held by the Union Compress Company in trust, at the place designated in the policy. We have shown by an unbroken series of decisions that the term " in trust " has acquired an established definition, in view of which contracts of insurance are entered into. It is held by the courts, and is known to factors, carriers and other bailees, that the beneficiary of such insurance is the *owner* of the goods. There is nothing then ambiguous about the policies, which calls for any explanation whatever.

True, the amount of cotton that was on the premises, its value and the *names* of the owners are not specified, and they can be established only by evidence. But evidence can go no farther. See *Emer* v. *Washington Ins. Co.,* 16 Pick. 502 ; *Finney* v. *Bedford Ins. Co.,* 8 Met. 348 ; *S. C.* 41 Am. Dec. 515 ; *Lippincott* v. *Louisiana Ins. Co.,* 2 Louisiana, 399 ; *Illinois Mut. Fire Ins. Co.* v. *O'Neile,* 13 Illinois, 89 ; *Holmes* v. *Charlestown Mut. Fire Ins. Co.,* 10 Met. 211 ; *S. C.* 43 Am. Dec. 428 ; *Cheriot* v. *Barker,* 2 Johns. 346 ; *S. C.* 3 Am. Dec. 437 ; *Bishop* v. *Clay Ins. Co.,* 45 Connecticut, 430 ; *Russell* v. *Russell,* 64 Alabama, 500 ; *Bolton* v. *Bolton,* 73 Maine, 299 ; *Snowden* v. *Guion,* 101 N. Y. 459 ; *Hough* v. *People's Fire Ins. Co.,* 36 Maryland, 398, which is an interesting and instructive case ; *Home Ins. Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 527, 542 ; *Lucas* v. *Insurance Co.,* 23 West Va. 258.

III. Under the evidence, the railroad companies were not and could not be the beneficiaries of the insurance.

1. This cotton policy which was put in evidence contains an unusual and prominent feature, which is irreconcilable with any intent to insure a carrier against a loss caused by its own negligence. Ordinarily a fire insurance policy runs " against

all loss or damage by fire." But the policy in question is against "all *direct* loss or damage by fire." The evidence discloses the fact that all of the bills of lading issued by the railroad companies provided that the carriers should be exempt from loss or damage by fire. The only interest, then, which the common carrier had in this cotton, was a contingent interest, arising from its liability for damages for loss by a fire, occurring through its own negligence.

Now, in the case at bar, the possible loss to the carrier by the destruction of the goods was by no means "direct" in any sense of the term. It was remote, contingent and conditional. The fire alone could not inflict any loss.

2. Another very serious objection to the claim that this insurance was for the benefit of carriers as to the goods destroyed arises on the record. The evidence is not only strong, but irresistible that the insurance was for the owners, and that the court below, if it assumed to decide the facts for the jury, should have come to a conclusion exactly contrary to that which it announced.

3. By the complaint and evidence it appears that all this cotton originally came into the hands of the Union Compress Company. Afterwards the railroads issued bills of lading on the cotton, some of which were issued before the policy, but more after it. If it be material to decide whether or not the possession was changed by those bills of lading, we submit that it was changed, and that at the time of the fire the cotton was in the possession of the railroad companies, and so not covered by our policy. The delivery of the bills of lading was conclusive on the question of the delivery of the cotton. *Kentucky Marine & Fire Ins. Co.* v. *West. & Atl. Railroad,* 8 Baxter, 268. This precise point under very similar circumstances was decided by the Supreme Court of Maryland. That court held that the issuing of a bill of lading by a transportation company of goods in warehouse of another company places the goods in the care and custody of the transportation company for purposes of insurance. *Fire Ins. Asso.* v. *Merchants' and Miners' Trans. Co.*, 66 Maryland, 339.

4. Upon one other point in this connection, we ask leave of

the court, to call in question an expression of opinion of this honorable court, and to respectfully request that that opinion may be reviewed by this court.

In *Phœnix Ins. Co.* v. *Erie Transportation Company*, 117 U. S. 312, Mr. Justice Gray, speaking for the court, said: "No rule of law or of public policy is violated by allowing a common carrier, like any other person having either the general property or a peculiar interest in goods, to have them insured against the usual perils, and to recover for any loss from such perils, though occasioned by the negligence of his own servants." p. 324.

We have already shown in this case that the insurance, if for the benefit of the railroads, was purely and wholly an insurance against negligence.

We wish, if we may, to argue to the court that insurance of that nature is contrary to public policy and void. We do so more hopefully because while, in the case cited, the question of public policy may have been involved, it did not, if we may judge by the reported briefs of counsel, assume as much prominence as other considerations of more immediate interest to their clients.

We most respectfully submit that the tendency of this class of insurance would be to foster a gross and often criminal negligence with respect to property and property rights of others, and to jeopardize the safety not only of the goods insured, but of the property of others in proximity thereto.

IV. In regard to the instruction of the court as to the liability for negligence of the Memphis and Little Rock Railroad Company we have to say that when a court instructs the jury as to facts, its narration or allusion to facts should be fair. It should not select and dwell on isolated facts which might be construed favorably to one side and make no allusion to other facts which might militate against that side. *Evans* v. *George*, 80 Illinois, 51; *Newman* v. *McComas*, 43 Maryland, 70; *West Chester Fire Ins. Co.* v. *Earle*, 33 Michigan, 143; *Jones* v. *Jones*, 57 Missouri, 138; *Chase* v. *Buhl Iron Works*, 55 Michigan, 139.

The instruction of the court below was not a fair one as to the facts. Whether or not the place named in the policy was

a proper place to store cotton under the circumstances was an immaterial question so far as the liability of the railroad company was concerned.

*It was the place selected by the owners of the cotton, and not by the railroad company. The cotton was stored there by the owners and not by the company.* The accumulation of cotton at this improper place, if it was improper, existed in the month of October, before our policy was issued, and in November. Less than 300 bales of the burned cotton were covered by bills of lading of that company, issued in October. Seventy-two bales of it were covered by a bill of lading issued November 10, only four days before the fire. No negligence can therefore be imputed to the railroad company on account of the unfitness of the place where the cotton was stored.

V. Assignment 3d is that the court erred in sustaining the demurrer of plaintiff to 7th paragraph of defendant's answer. That paragraph is as follows: "The defendant says that it is a provision of said policy, that it shall not apply to or cover cotton, which, at the time of the loss, was covered in whole, or in part, by marine policies, and it says that at the time of said loss, 2172 bales of said cotton, alleged by plaintiff to have been burned at said fire, and of the value of $101,973.73, were covered by marine policies theretofore issued to the respective owners of said cotton."

The policy, which is part of the complaint, contains the following provision. "It is agreed and understood to be a condition of this insurance that this policy shall not apply to or cover any cotton which may at the time of loss be covered in whole or in part by a marine policy."

By its policy, the plaintiff in error absolutely declined to insure any cotton which, at time of loss, was covered by marine policies. As to the validity of this condition, there can be no question. The right of the insurer to decline insurance absolutely upon certain classes of goods, or under circumstances distasteful to the insurer, cannot be denied. He can provide that goods held in trust are not insured, unless so declared in the policy, and the provision is valid. *Baltimore Fire Ins. Co.* v. *Loney,* 20 Maryland, 20.

In this case, the plaintiff in error in positive terms declined to insure cotton covered by marine policies. A reason for this provision may easily be found, but it is not necessary to search for one. It is sufficient to say, thus is the contract written. We allege that at the time of loss, nearly all this cotton was covered by marine policies. If that be so no liability attached to this company for loss of cotton so covered.

VI. Assignment 10th is the rejection of competent evidence proffered by us that at the time of the fire 2172 bales of cotton covered by bills of lading of the railroad companies and alleged to have been burned, and of the value of $101,973, were covered by marine policies of insurance, theretofore issued to the respective owners of said cotton, etc.

By our answer we alleged that at the time of the fire there was a total insurance on the cotton burned to the amount of about $250,000 and claimed the benefit of the contribution clause in our policy. The complaint alleged total insurance to amount of $142,500.

Our policy contained the following contribution clause : " In case of any other insurance upon the property hereby insured, *whether to the same party or upon the same interest therein or otherwise,* whether valid or not, and whether prior or subsequent to the date of this policy, the insured shall be entitled to recover from this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, whether such other insurance be by specific or by general or floating policies, or by policies covering only an excess of specified loss. And it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, or any part thereof, subject to the conditions of average, this policy shall be subject to average in like manner."

It will be seen by the very terms of the policy that it is immaterial on the question of contribution, whether the fire policies were taken out for the benefit of the owners or of the railroad companies. In either case the marine policies are contributory.

The clause is very like, but a little stronger, than that sus-

tained by the Court of Appeals of Maryland in *Fire Ins. Ass'n* v. *Merchants' & Miners' Trans. Co.* already cited. Under it these marine policies were contributory to our fire policy. The validity of the clause can hardly be called in question. It is perfectly competent for an insurance company to provide in its policy that any other policy taken out on the insured property shall be considered contributory, even though that policy be invalid, or that its policy shall be absolutely void under like conditions. *Liverpool, London &c. Ins. Co.* v. *Verdier*, 35 Michigan, 395; *Continental Ins. Co.* v. *Hulman*, 92 Illinois, 145.

We then respectfully submit that we should have been permitted to prove the existence of these contributory policies. That proof being ruled out, we were held to pay the proportion of this loss which 10,000 bears to 142,500, while, if liable at all, we should have been held to pay only in proportion of 10,000 to 244,473.

VII. Assignment 11th is that the court erred in striking out testimony of the bookkeeper of Ralli Brothers, who were claiming pay from the Memphis & Little Rock Railroad Co. for 158 bales of cotton, to the effect that said cotton was covered by marine policies taken out by Ralli Brothers. It was stricken out on the ground that we could prove the insurance only by the policies. It was shown that we could not get the policies. The ruling was erroneous. *Snow* v. *Carr*, 61 Alabama, 363.

It was especially erroneous in this case, because the Company was making a claim on us for the value of those 158 bales solely because Ralli & Brothers had made a claim on them. Any evidence which the railroad could have used against Ralli Brothers we were entitled to use against the railroad, and certainly when Ralli Brothers refused to produce the policies, the railroad company could have proved their existence by their clerk. The bills of lading under which that cotton was shipped stipulated that the carriers should have the benefit of all insurance.

VIII. Our 17th assignment is that the court erred in refusing to instruct the jury that no cause of action arose on this policy, on behalf of the railroad companies, until actual payment of damages to the owners.

The statement of the facts in this case is a strong argument on behalf of that instruction. The Memphis & Little Rock Railroad has not paid a cent, and it is not alleged or proved that it ever will or intends to.

It is contesting the suits brought against it, and may, while we are writing, have defeated them. It was not a party to this action, nor estopped by the pleading therein. If it has defeated the owners in their actions, — and it certainly ought to defeat them, on the evidence in this record, — what recourse would we have were this judgment affirmed?

The Missouri Pacific had paid nothing when this action was commenced.

No cause of action accrues in a case of this kind until *payment* of the railroad companies of the damages they claim. *Cin., Ham. & Dayton Railroad Co.* v. *Spratt*, 2 Duvall, 4.

*Mr. U. M. Rose* and *Mr. G. B. Rose* for defendant in error.

*Mr. John F. Dillon*, for defendant in error, in the interest of the St. Louis, Iron Mountain and Southern Railway Company.

MR. JUSTICE BLATCHFORD, after stating the case as above, delivered the opinion of the court.

The foregoing exceptions, except the two which relate to the sustaining of the demurrer to paragraphs 7 and 8 of the answer, may be grouped together, because they relate to the same question. The court refused to strike out the matter in the complaint which is before recited in brackets, and also overruled the demurrer of the defendant to that portion of the complaint ; and on the trial the plaintiff was permitted to introduce evidence tending to prove some of the allegations contained in that part of the complaint. The three instructions before quoted as asked by the defendant, and not given, relate to the same matter.

The defendant contends that there was error in the action of the court covered by those exceptions, and complains that the court treated the words in the policy, " their own or held by

them in trust, or on commission," as if they read, "on account of 'whom it may concern;'" that, as the plaintiff did not own the cotton, the beneficiaries under the policy were its owners; that no interest of any common carrier was covered by the policy; that it was not ambiguous; and that no parol testimony was admissible to aid in its interpretation or to show that the railroad companies were intended to be beneficiaries under it. The view urged is, that the plaintiff did not own any of the cotton or hold any of it on commission; that the insurance on goods held in trust was an insurance only for the benefit of the owners of the cotton; and that evidence of an intention to effect the insurance for the benefit of one who was not the owner of the goods was inadmissible, because it would contradict the policy.

But we think the positions taken on behalf of the defendant are not sound. The title to cotton in the temporary custody of a bailee for compression, for which receipts or bills of lading have been given, is manifestly changing hands constantly. The language of the present policy, insuring cotton "their own or held by them in trust or on commission," accommodates such a state of things. In the present case, the insurance was really taken out by the railroad companies, and that fact was well known to the agents of the defendant at the time the policy was issued. The railroad companies had an insurable interest in the cotton, and to that extent were the owners of the cotton, which was held in trust for them by the plaintiff. Evidence of their ownership of the cotton was admissible. *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527, 542.

The policy covered all the cotton which was placed in the hands of the plaintiff by those companies. It was lawful for the plaintiff to insure in its own name goods held in trust by it, and it can recover for their entire value, holding the excess over its own interest in them for the benefit of those who have entrusted the goods to it. *DeForest* v. *Fulton Fire Ins. Co.*, 1 Hall, 94; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527, 543; *Stillwell* v. *Staples*, 19 N. Y. 401; *Waring* v. *Indemnity Fire Ins. Co.*, 45 N. Y. 606; *Waters* v. *Monarch Fire Ass. Co.*, 5 El. & Bl. 870; *Siter* v. *Morrs*, 13 Penn. St.

218; *Johnson* v. *Campbell*, 120 Mass. 449; *Fire Ins. Asso.* v. *Merchants' & Miners' Trans. Co.*, 66 Maryland, 339; *London & Northwestern Railway* v. *Glyn*, 1 El. & El. 652; *Phœnix Ins. Co.* v. *Hamilton*, 14 Wall. 504, 508.

The words "held by them in trust," in this policy, cannot properly be limited to a holding in trust merely for an absolute owner, when it clearly appears that the railroad companies had an insurable interest in the cotton, and the plaintiff held the property in trust exclusively for those companies. The reasoning of the cases where the bailor was the owner of the goods insured by the bailee applies equally to any person, who, having an insurable interest in property, entrusts it to another; and such bailor can, to the extent of his insurable interest, claim the benefit of insurance effected in his favor by his bailee. The original depositors of the cotton surrendered to the railroad companies the receipts which they had taken from the plaintiff, and those companies were thus substituted in the relation to the plaintiff which before had been held by such depositors. The railroad companies thus became the beneficiaries of the trust, so far as the plaintiff was concerned, because they thus became the persons to whom the plaintiff owed the duty of bailment, and the persons entitled to demand the possession of the property from the plaintiff. There was privity in the plaintiff with the person who held its receipt, and privity with no one else. This is a necessary and obvious result of the course of business; and the business in question could not be carried on under any other circumstances so as to give protection by insurance to the parties really interested.

The case is not varied or affected by the clause in the receipts given by the plaintiff, "not responsible for any loss by fire," because the relation of the plaintiff to the property entrusted to it, and its duty to the bailor, determine the legal propriety of the insurance for the benefit of the latter. In the present case, the arrangement was that the railroad companies should pay to the plaintiff, in connection with the charge for compressing, an additional sum which would provide for the insurance of all cotton in the possession of the plaintiff, for which the railroad companies should issue bills of lading. The

defendant had notice that the insurance was effected in the interest of the railroad companies; and it issued the policy in the terms it did, to include the protection of the railroad companies. The fact that the same policy might protect the interest of other persons in respect to cotton held for them by the plaintiff cannot affect the question whether it protects the interest of the railroad companies in respect to cotton held by the plaintiff for them, during the life of the policy. Nor is it material whether the cotton was originally deposited by the railroad companies, or whether their interest accrued through the subsequent transfer to the railroad companies of receipts given by the plaintiff on a deposit of cotton made by other parties.

(2) We come now to another group of errors assigned. The defendant requested the court to instruct the jury as follows: " The policy in question provides that it shall be void if there be any change in the possession of the insured property, except under circumstances which have no bearing on this case. If the jury believe from the evidence that after the policy in question was issued, any common carrier, with the knowledge and consent of plaintiff and under agreement with plaintiff, issued its bills of lading for any of the cotton which at the date of the policy was or thereafter came into possession of the plaintiff, the issuance of such bills of lading, under the conditions of the policy, avoided the policy as to all cotton covered by such bills of lading." The court refused to give such instruction, and the defendant excepted to the refusal.

The court instructed the jury as follows: " By an agreement made between the plaintiff and the St. Louis, Iron Mountain and Southern Railway Company and the Memphis and Little Rock Railway Company, the plaintiff engaged to insure for said railway companies, respectively, all cottons stored in the compress sheds and yards of the plaintiff, at the foot of Main Street, Little Rock, when the railway companies or either of them should notify the plaintiff of the issuance by them of bills of lading therefor. This agreement was carried out, and on the day of the fire the plaintiff held insurance in various companies, aggregating the sum of $142,500.00, in

trust and to indemnify the railway companies against loss or damage by fire of the cotton for which they had issued their bills of lading and which was stored in the plaintiff's sheds and yards described in the policy, at the foot of Main Street." The defendant excepted to this instruction.

The court also charged the jury as follows: "As the plaintiff is a trustee, and insured the cotton for the benefit of the railway companies, and has no separate claim of its own on the property, it is only entitled to recover an amount equal to its liability to the railroad companies; or, in other words, a sum that will make the railway companies whole for the cotton on which they had issued bills of lading; so that, if the market price of cotton produces a larger sum than the aggregate loss of the railway companies (and 2670 bales at $50 per bale, if you should find that was the number of bales and their value, produces an amount slightly in excess of the claims of the railroad companies), then the plaintiff's recovery must be on the basis of the latter sum — that is, one that makes the railway companies whole. In no event is the market value of the cotton to be increased, but it may be reduced by the difference between the value and the amount that will satisfy the just claims of the railway companies. What amount of cotton was burned for which the railway companies had issued bills of lading and which was covered by policies taken out by the plaintiffs, the value of the same, and the amount of the just demands of the railway companies against the plaintiff for the cotton so burned, are questions of fact to be determined by you." The defendant excepted to this charge.

The court also charged the jury as follows: "This suit is brought on a policy of insurance issued by the defendant's company to the Union Compress Company to indemnify the railroad company for the loss of cotton or for cotton that might be burned after the railroad company issued its bills of lading for it, and while it yet remained in the custody of the Compress Company. Now, the Compress Company, under its contract with the railroad company, is bound to make good, by insurance, to the railroad company, any damages resulting to it

from the loss of cotton which the Compress Company held for the railroad company after the railroad company had issued its bills of lading therefor and notified it thereof." The defendant excepted to this charge.

The defendant contends that, although, under a proper construction of the policy, the railroad companies may be regarded as properly beneficiaries under it, the matters involved in the instructions so given by the court were questions of mingled fact and law, and were erroneous, in the light of the facts proved by the plaintiff. The ground urged is, that the policy cannot be reconciled with any intent to insure a railroad company against a loss caused by its own negligence, because the policy insures against "all direct loss or damage by fire;" that, therefore, the only interest which the railroad companies had in the cotton was a contingent interest, arising from their liability for damages for loss by a fire occurring through their own negligence; that the interest alleged to have been insured as that of the railroad companies was not such as could have sustained a claim on a direct loss by fire, because it was a contingent or doubtful interest, and not a certain or direct interest; that the fire alone could not inflict any loss, and that whether the railroad companies would suffer loss would depend on the contingencies, (1) whether or not their negligence caused the loss; (2) whether the owner would be able to prove negligence in the railroad companies; (3) whether the owner was innocent of contributory negligence; and, (4) whether the owner should make a claim for loss against the railroad companies within the statute of limitations.

Under this head, it is also urged, that, on the face of the policy, the insurance was on cotton held in trust by the plaintiff, in a designated place, for thirty days after November 2, that it was claimed by the plaintiff, in the face of the policy and contradictory of its terms, that cotton covered by a bill of lading issued November 8th, by the Missouri Pacific Railway Company, which was held in trust by the plaintiff, and was in the place described, was not covered by the policy until the bill of lading was issued; that if, as the defendant

alleges the fact to be, that cotton was covered by the policy from the 3d to the 8th of November, for the benefit of its owners, there was no process known to the law by which the benefit of such insurance could be transferred to the railroad companies, without action by either the owner or the insurer; that the fact that the plaintiff understood that the insurance was for the benefit of the owners of the cotton was shown by the practical construction put upon the insurance by the plaintiff after the fire, in putting in a claim on behalf of Hanger for 112 bales of cotton burned not covered by the bills of lading, and being paid for it, on behalf of Hanger, as owner of the cotton; and that thus the plaintiff claims that the insurance was for the owners of the cotton, or for the railroad companies, according to circumstances.

It is further urged that, if the bills of lading changed the possession of the cotton, it was at the time of the fire in the possession of the railroad companies and not in that of the plaintiff, and the plaintiff had ceased to hold it in trust; that in such case it was not insured, because of the provision in the policy that any change in the possession should avoid the policy; that if the bills of lading did not change the possession, there could have been no insurance on behalf of the railroad companies, because, in the absence of possession by them, they had no right to insure and no contingent liability to loss; and that it was error in the court to charge that at the time of the fire the plaintiff held insurance on cotton covered by bills of lading.

This court is also asked to review its announcement of the principle of law laid down in *Phœnix Ins. Co.* v. *Erie Transportation Co.*, 117 U. S. 312, 324, that "no rule of law or of public policy is violated by allowing a common carrier, like any other person having either the general property or a peculiar interest in goods, to have them insured against the usual perils, and to recover for any loss from such perils, though occasioned by the negligence of his own servants."

It is also contended that the jury had a right to decide whether or not the policy was issued on goods held in trust for the railroad companies by the plaintiff, and whether or not

the plaintiff or the railroad companies held the cotton at the time of the fire; and that these were not questions for the court to decide.

In reply to these suggestions, it is to be said, that the exception of loss by fire, contained in the receipts given by the plaintiff, and in the bills of lading given by the railroad companies, did not free them from responsibility for damages occasioned by their own negligence or that of their employés. Nor are we disposed to review our decision that common carriers can insure themselves against loss proceeding from the negligence of their own servants. The doctrine announced in the case cited has been referred to with approval in the subsequent cases of *Orient Ins. Co.* v. *Adams*, 123 U. S. 67, 72, and *Liverpool Steam Co.* v. *Phœnix Ins. Co.*, 129 U. S. 397, 438.

As to the suggestion that by the bills of lading the possession of the cotton was transferred to the railroad companies, and that the policy was avoided thereby, the answer is, that the cotton was still in the hands of the plaintiff, in its actual possession and upon its premises. At most, the railroad companies, by acquiring the receipts of the plaintiff and issuing bills of lading for the cotton, took only constructive possession of it; and the plaintiff, retaining actual and physical possession of it, did not lose any element of possession necessary to give it the right to effect insurance for its own benefit, and, as bailee or agent, for the protection of the railroad companies. All that the railroad companies acquired was the right to ultimate possession, which passed to them by the transfer to them, by the original depositors, of the cotton receipts given by the plaintiff.

As to the argument that no recovery can be had in the interest of the railroad companies, because the injury to them depended upon their liability for the negligence of their employés in causing the fire, and the point taken in regard to the words of the policy, "direct loss or damage by fire," the reply is, that those words mean loss or damage occurring directly from fire as the destroying agency, in contradistinction to the remoteness of fire as such agency. The books are

full of cases on that subject, and the meaning of the policy is not doubtful. Remoteness of agency is the explosion of gunpowder, gases or chemicals, caused by fire; the explosion of steam-boilers; the destruction of buildings to prevent the spread of fire, or their destruction through the falling of burning walls; and so forth. In the present case, the bales of cotton were physically burned by the direct action of fire.

(3) The court also charged the jury as follows: "Now, you have heard the testimony, gentlemen, with reference to the situation under which this cotton was placed and the length of time it remained there. If you think there is no negligence on the part of the railroad company, then you will find that the railroad company is not liable for this cotton. If you can say that that was a proper place to store cotton, and that leaving a passage-way there of not exceeding four feet up and down, through which persons passed at all hours of the day and night to the boat-house and skiff ferry, and it being a dry season, with three or four thousand bales of cotton stored there — *then, if you say this is not negligence, you excuse this railroad company, and to that extent will disallow the claim of the plaintiff; but if you should so find I would be very much surprised at your verdict, and would not be surprised if I should set it aside; but I will leave it for you to say.*" The defendant excepted to this instruction, and especially to the italicized portion thereof.

It is urged that in this part of the charge the court did not allude to facts proved which the defendant claimed disproved negligence, and that thus the instruction was not a fair one as to the facts; that the place of storage was selected and the cotton was stored there by the owners of it, and not by the Memphis and Little Rock Railroad Company; that no negligence can be imputed to the latter on account of the unfitness of the place; that it had no control over the cotton stored in that place, and had no track at that place, the Missouri Pacific Railway Company having the track there; that the Memphis and Little Rock Railroad Company had no opportunity to obtain possession of the cotton until after it had been compressed at Argenta; that the bills of lading of the latter

company exempted it from liability for loss occurring on the lines of other carriers, and the cotton was burned, not on its line, but on the line of the Missouri Pacific Railway Company; that the court made no allusion to any of these matters as going to establish the absence of negligence and liability on the part of the Memphis and Little Rock Railroad Company; that the court threatened the jury with its displeasure and the setting aside of the verdict if the jury should bring in a verdict for the defendant on that issue; and that this action of the court was erroneous.

But the mere fact of the dwelling by the court with emphasis upon facts which seemed to it of controlling importance, and expressing its opinion as to the bearing of those facts on the question of negligence, is immaterial, if the court left the issue to the jury. In the charge, just before the passage complained of, the court, in referring to the question of the liability of the Memphis and Little Rock Railroad Company for the destruction of the cotton, had said to the jury: "It is for you to determine whether this railroad company was not guilty of negligence, and was not at fault in leaving this cotton in an exposed condition after it issued bills of lading therefor;" and in the clause of the charge objected to, the court expressly states that it leaves the question of negligence to the jury.

On this subject, this court said, in *Vicksburg &c. Railroad v. Putnam*, 118 U. S. 545, 553: "In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to a jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important and express his opinion upon the facts; and the expression of such an opinion when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error." See, also, *Nudd v. Burrows*, 91 U. S. 426; *Indianapolis &c. Railroad v. Horst*, 93 U. S. 291; *St. Louis &c. Railway v. Vickers*, 122 U. S. 360.

(4) In the course of the trial the plaintiff offered evidence tending to prove that the contracts and custom of business stated in the bill of exceptions were well known to shippers and to the defendant when the policy sued on was issued, it having been stated to the agents of the defendant by an officer of the plaintiff, when the policy was applied for, that it was intended to cover the interests of the plaintiff and of the railroad companies. The defendant objected to the admission of the evidence, but the objection was overruled, and the defendant excepted; and this is alleged as error.

In this connection it is urged that the complaint does not allege any such knowledge on the part of the defendant, or any intention on its part to issue its policy for the benefit of the railroad companies. The case of *Hough* v. *People's Fire Ins. Co.*, 36 Maryland, 398, is cited in support of this assignment of error. But we think the evidence was admissible. In the Hough case the policy covered the merchandise insured, "their own, or held by them in trust, or in which they have an interest or liability." Parol evidence was held to be incompetent which was offered to show that the policy did not cover merchandise which was their own. The evidence would have contradicted the plain terms of the policy. In the present case, the evidence offered was admissible under the ruling in *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527, 542. In that case the court says: "It is no exception to the rule" (governing the admission of parol evidence) "that, when a policy is taken out expressly 'for or on account of the owner' of the subject insured, or 'on account of whomsoever it may concern,' evidence beyond the policy is received to show who are the owners or who were intended to be insured thereby. In such cases, the words of the policy fail to designate the real party to the contract, and, therefore, unless resort is had to extrinsic evidence, there is no contract at all." See, also, *Finney* v. *Bedford Ins. Co.*, 8 Met. 348; *Fire Ins. Asso.* v. *Merchants' & Miners' Trans. Co.*, 66 Maryland, 339; *Snow* v. *Carr*, 61 Alabama, 363.

Having issued the policy with notice that it was intended to cover the interest of the railroad companies, the defendant is

estopped from asserting that the policy was intended to protect only the legal owners of the cotton.

(5) It is alleged, also, that the court erred in sustaining the demurrer of the plaintiff to paragraph 7 of the defendant's answer, which alleged that at the time of the loss 2172 bales of the cotton alleged to have been burned were covered by marine policies theretofore issued to the respective owners of the cotton, and therefore, under the terms of the policy in this suit, such cotton was not covered by it. It is alleged, also, as error, that the court, at the trial, rejected, on the objection of the plaintiff and under the exception of the defendant, evidence offered by the latter tending to prove that that number of bales of the cotton covered by the bills of lading, and alleged to have been burned, were, at the time of the fire, covered by marine policies of insurance theretofore issued to the respective owners of such cotton, residing in various portions of the United States and in England.

It is to be said, in reply, that paragraph 7 of the answer does not show that the marine policies were on the same interest as that covered by the fire policy. This element is necessary, because otherwise the policy sued on would be of no practical force. As soon as the consignees of the cotton were advised by telegraph of its shipment, they would take out marine policies to cover their own risk; and thus the fire insurance companies would obtain the premiums of insurance from the railroad companies, and immediately avoid all risk, because of the taking out of the marine policies. *North British Ins. Co.* v. *London, Liverpool & Globe Ins. Co.*, 5 Ch. D. 569. The question of the legal effect of the contribution clause of the policy, before recited, is not presented by the record.

The objection alleged at the trial to the introduction of evidence as to the marine policies was made on the ground that it was immaterial and irrelevant, and that the insured knew nothing of those policies and had no interest in them. This was the objection which was sustained; and the allegation of paragraph 7 of the answer was, that the marine policies had been issued to the respective owners of the cotton. It did not appear that either the insurer or the insured had any previous

knowledge of the existence of the marine policies, nor did it appear whether they were issued before or after the date of the fire policy. The issuing of the marine policies, in order to have any effect in this case, must amount to double insurance. In no other view can the defendant have any interest in the question of marine insurance. Double insurance exists only in the case of risks upon the same interest in property and in favor of the same person. *North British Ins. Co.* v. *London, Liverpool & Globe Ins. Co.*, 5 Ch. D. 569; *Lowell Mfg. Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y. 591; Phillips on Insurance, § 359; Wood on Fire Ins. 1st ed. § 352. No reason can exist for a distinction between the construction of a provision avoiding a policy in case of marine insurance and in case of further or additional fire insurance. In the latter case the provision is always construed as relating only to additional insurance upon the same interest and effected by the same person or in his interest.

The contention of the defendant is, that its policy is avoided by the taking out of a marine policy by the owner of the cotton, without the knowledge or participation of the plaintiff or of the railroad companies, whether the marine insurance was effected before or after the fire insurance in favor of the railway companies, and although the fire insurance policy was taken to protect the independent interests of the railroad companies. We cannot admit the soundness of this view. The cases cited where a policy is avoided by the carrying on of a prohibited business, or the storing of a prohibited article, without the knowledge or consent of the insured owner of a building, are placed upon the ground that the possession of the tenant or occupant of a building is the possession of its owner, and that the contracts which he makes as to the use of the insured premises are in the nature of warranties, and relate to matters over which he has legitimate control. It cannot be contended successfully that the condition in question here was intended by the plaintiff to subject the policy to forfeiture if any person who had a remote and independent insurable interest should take out a policy of marine insurance to protect that interest, the plaintiff having no privity with such

person. As was said in *Grandin* v. *Rochester German Ins. Co.*, 107 Penn. St. 26, 37: "We are not to suppose that conditions involving forfeitures are introduced into policies by insurance companies, which are purely arbitrary and without reason, merely as a trap to the assured or as a means of escape for the company in case of loss. When, therefore, a general condition has no application to a particular policy; where the reason which alone gives it force is out of the case, the condition itself drops out with it." See, also, *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405.

The offer of evidence by the defendant at the trial, in regard to the marine insurance, was by its terms an offer to prove the mere fact of marine insurance, in support of the defence set up in paragraph 7 of the answer; and the claim on the part of the defendant that the evidence was proper to support the further defence set up in the answer, as to the amount of the proportionate liability of the defendant, is not tenable. The offer was to prove merely the fact of marine insurance, and not to prove its amount. It was an offer in bar of liability, and not an offer applicable to a reduction of the verdict. No suggestion of the latter object was made in the offer, and the evidence, if admitted as offered, could have no bearing upon the question as to how much the proportionate liability of the defendant would be reduced by virtue of the marine policies. The only specific offer to prove the terms of any marine policy, and the extent of the insurance under it, was made in the form of an offer of the deposition of one Phillips and the testimony of one Bowen, both of which were excluded on proper grounds, and complaint is made only of the exclusion of the deposition of Phillips.

(6) It is assigned for error that the court erred in striking out the testimony in the deposition of Phillips, the clerk of Ralli Bros., who were claiming pay from the Memphis and Little Rock Railroad Company for 158 bales of cotton, to the effect that that cotton was covered by marine policies taken out by Ralli Bros. The policies of insurance mentioned in the testimony in the deposition were not attached to it. The testimony was objected to by the plaintiff as incompetent because

it was an attempt to prove by parol the contents of written instruments; it was stricken out by the court, and the defendant excepted.

The ruling of the court was manifestly correct. There was no proof that the policies referred to were in Liverpool, for all that the witness Bowen said was that he was informed they were there; and as to the copy which Phillips refused to attach to his deposition, all the evidence in regard to its identity is that Phillips said to the witness Bowen that such copy was a copy of the marine policy which had been issued on the cotton. This was, all of it, only hearsay evidence.

(7) The court was requested by the defendant to instruct the jury as follows: "As this action is brought solely on behalf of the railroad companies on account of liability incurred through carelessness of the agents and servants of the companies, no cause of action accrued against the defendant until the actual payment by said companies of damages on account of the alleged fire, and the recovery cannot be greater than the value, on November 14, 1887, at Little Rock, of the cotton so burned and paid for — nor greater than the sum paid by the railroad companies — that is, if they have paid more than the value of the cotton they cannot recover the excess from the defendant; if they have paid less than the value, they can recover only to the extent of the payment." The court refused to give that instruction, and defendant excepted. This is alleged as error. It is urged that the Memphis and Little Rock Railroad Company has never paid any damages, and that the Missouri Pacific Railway Company had not paid any when this suit was commenced; and it is contended that no cause of action accrues, in a case of that kind, until payment of the damages by the railroad companies is made.

But, as a bailee, under a policy taken out to cover property, his own or held by him in trust or on commission, may enforce the contract of insurance to the full value of the property destroyed, holding the proceeds primarily for his own benefit and the balance for that of his bailor, the right of action of the plaintiff accrued on the occurring of the loss. The case cited by the defendant, *Cin., Hamilton & Dayton Railroad*

v. *Spratt*, 2 Duvall, 4, does not apply to the present case. That was a suit brought by a consignee of goods against a carrier, where the carrier was entitled, under a bill of lading given by it to the consignee, to insurance obtained by the consignee; and it was held that the consignee could not be compelled to proceed upon the policy of insurance before enforcing his claim against the carrier, even where it appeared that the insurer had agreed to pay its loss under the policy, and although it was alleged that the suit was prosecuted for the benefit of the insurer. But here the plaintiff is the assured. The insurance included the protection of the railroad companies. The premium was paid. The insured property was destroyed by fire. The condition of the liability of the insurer was complete, and its liability had fully accrued. The only question for litigation was whether the railroad companies were protected by the insurance. The defendant is called upon to perform only its agreement to pay the insurance money in case of the destruction of the cotton by fire. Its liability is not dependent upon the question whether the liability of the railroad companies has been discharged; nor is the plaintiff's right of action contingent upon the payment by the railroad companies of the value of the cotton burned, but it is contingent only upon the destruction of the cotton by fire under circumstances which impose a liability upon the railroad companies.

We see no error in the record, and the judgment is

*Affirmed.*