West Branch Lumberman's Exchange *v.* American Central Insurance Company, Appellant.

*Insurance—Fire insurance—Inventory of goods destroyed—Evidence.*

In an action upon a policy of fire insurance an inventory, made before the fire, of the goods totally destroyed is admissible in evidence, in connection with the testimony of the parties who made it, as tending to show the amount and value of the goods destroyed.

*Insurance—Fire insurance—Ownership of goods—Double insurance.*

A lumberman's exchange, incorporated, took out a policy of fire insurance " on lumber, lath and pickets, their own or held by them in trust, or on commission, or sold but not delivered, piled in the yard leased by K." At the time the goods were destroyed, the assured had not parted with its interest in the goods. K. had been intrusted with the property under a contract of bailment to saw the logs into lumber. A printed clause in the policy provided that " the interest of the assured shall be unconditional and sole ownership." K., without the knowledge of the exchange, took out a policy of insurance " on lumber of every description, including lath, shingles and pickets, their own or held by them in trust, or sold but not delivered, on ground leased from F." This " ground " was the same as the " yard " mentioned in the first policy. *Held,* (1) that the lumber exchange did not violate the condition of the policy in regard to ownership of the goods; (2) that the written stipulation should prevail over the printed stipulation; (3) that the contract with K. did not constitute such a change of ownership as the insurance company could object to; (4) that the policy taken out in the name of K. and the one in suit were not upon the same subjects, and therefore not double insurance; (5) that the word " lumber " as used in the policy in suit did not include shingles; (6) that as the lumber exchange did not know of the K. insurance until after the fire, or consent to it at any time, the policy in suit was not affected by such insurance.

*Insurance — Fire insurance — Double insurance.*

Double insurance takes place when the assured makes two or more insurances, either simultaneous or successive on the same subject, the same risk and the same interest.

Argued Jan. 1, 1897. Appeal, No. 8, May T., 1897, by defendant, from judgment of C. P. Dauphin Co., June T., 1896, No. 803, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before McPHER-SON, J.

At the trial, Theodore Lannert, called on part of plaintiff and sworn, testified as follows upon examination by Mr. McCormick :

"Q. In whose employ were you in 1894 and 1895 ? A. Mr. Charles Kreamer. Q. In what capacity ? A. I was lumber shipper. Q. At what time did Mr. Kreamer begin sawing the logs ? A. On August 29, 1894. Q. How long had you been engaged as a lumber shipper ? A. About eight years. Q. Did you or not continue in the employment of Mr. Kreamer as lumber shipper until the time of the fire ? A. Yes, sir; I did. Q. What occurred on October 31, 1895 ? A. The fire. Q. Was there any lumber saved ? A. No, sir. Q. Did you or not at any time prior to the fire make an inventory of the lumber upon the Kreamer yard at Dauphin ? A. Yes, sir; October 28, 1895. Q. Paper, marked exhibit No. 3, purporting to be an inventory taken October 28, 1895, of the lumber on the Dauphin yards, shown witness and the witness is asked in whose handwriting it is ? A. That is my handwriting. Q. Is it an inventory to which you have already referred ? A. Yes, sir. Q. What kind of lumber was piled upon that yard, sawed at that mill ? A. Pine, hemlock, oak and hard woods, a little bit of cherry. Q. In what manner did you make the inventory, I mean as to the quantity, how did you do it, explain to the jury, perhaps some do not understand it ? A. Why, counted up the piles—the piles of lumber is piled of course—and the cross boards, one across the head and one within four feet of the back, and then there is so many boards in the course, then you count the outside course in the pile and the number across, and then multiply them together, and the

number of feet in each piece multiplied up, that gives you the number of feet in each pile. Q. Does that bring an accurate result? A. Yes. Q. In taking your inventory did you go to the board piles? A. Yes, sir. Q. What did you do there? A. I counted the courses from the bottom to the top and across them. Q. Did you keep a tally sheet? A. Yes, sir. There it is. That is the original tally sheet after I was in the office. Q. Did you make any memoranda from which this was made up? A. Yes. Q. Where are these original memoranda? A. They were taken on small slips of paper and of course figured up and then throwed in the waste basket. Q. Why did you destroy the paper that you spoke of? A. That is customary, to take it on small pieces of paper and go in your office and set your inventory down on a sheet of paper and that would be called the original. Q. Did you make a memorandum of the amount in each pile separately? A. Yes, sir. Q. Then you had 194 pieces in taking these memoranda? A. It didn't take 194 pieces to make that memoranda up. Q. You had 194 items? A. Yes, sir. Q. Is that the way you have made other inventories? A. That is the way we make all our inventories. Q. Now, Mr. Lannert, first I want to know, this inventory is 523,384 feet 4×4 white pine, can you say how many piles that represented? A. No. Q. Can you give the amount in any one pile making up that aggregate? A. Yes, sir; about 50,000. Q. Give the number of the pile. A. No, I can't do that."

Mr. Snodgrass: Counsel for the defense now object to the witness on the stand refreshing his memory from the papers submitted in testifying in this case, the statement appearing to have been composed of lump sums made up from a large number of separate items which he himself had taken and afterwards destroyed, and, independently of the paper, having no recollection of the correctness of the items making up the lump charges.

The Court: I cannot pass on that objection unless the witness is examined further on this subject. You say he has no independent recollection of the matters contained in this paper.

Mr. Snodgrass: "Q. Have you any recollection of any of the items making up these lump charges? A. Yes, I told you that once. I told you about one pile having 50,000 in; little over 50,000; few feet over. Q. Can you name any other one? A. Yes, sir. Q. Can you say what kind of lumber it was? A. 1×12

×16. Q. What kind of lumber? A. Hemlock. Q. Was it culls? A. No, sir. Q. Is it single or double pile? A. Double pile. Q. How many courses? A. I couldn't just tell you that. Q. How high was it above the tramway? A. Seventy courses. Q. And how far below the tramway? A. It may have been that below for all I know. Q. How many courses does it take to make 50,000 feet? A. About 330 courses, 14 in a course. Q. Now give us some other pile that you remember. A. I remember one out on the track that run down towards the lower end of the yard, track 4 I guess they called that. Q. Do you know the number of that pile? A. No. Q. Of what kind of lumber was it composed? A. Hemlock. Q. What kind of hemlock? A. 1×12×18. Q. How high was that pile? A. That is about the same height as the other one. Q. How many courses? A. About 334 courses. Q. How much lumber would that make? A. That there would make about 56—57,000, along there. Q. Isn't it customary amongst particular lumber dealers in taking inventories, to put down first the number of piles, then the number of pieces in that pile, and then the kind of lumber, whether it is 2×4 or 1×12 or whatever it may be, 18 or 16, and then to carry out on that the amount in that particular pile, isn't that the way it is done? A. It is done on a slip of paper. Q. Did you keep those memoranda all on the same paper? A. On the same paper, no, sir; you couldn't put them all on one paper. Q. Didn't you make an inventory in January, 1895 and didn't you keep the details of that and was that the first one you took? A. Yes, sir. Q. What did you make this for? A. To know how much stock was on the yard. Q. Didn't that other inventory show the kind of lumber, the number in each pile and all about it, the one you took in January, 1895? A. Yes, sir. Q. You have 42,876 of yellow pine, how many piles is that in? A. In two. Q. Where were they located? A. Second and 4th track. Q. Or both on one track, which track was it? A. I said on 2d and 4th track, so they couldn't be both on the one track. Q. Were the piles the same size? A. No, not quite. Q. How many piles were there of 1×10×20? A. I don't just recollect how many there was. Q. Would the memoranda which you made, that is the slip of paper that you have spoken of, would those papers have given you all the details of this to show how many piles, the kind of lumber and

the number of each? A. No, just show it in a lump, just the same as that about. Q. They were not kept separate on your original list? A. No. Q. How many did you add together or mix up on your original list? A. Sometimes 2, sometimes maybe 3. Q. And 4? A. Yes, sir; along like that. Q. How did you carry in mind the amount then by which you made up those aggregates ;.didn't you put down each pile on the paper? A. Oh, no ; if a pile had so much in the pile and so many feet, I set that just up in my head and then I put it right down."

Mr. McCormick: The inventory of October 28, 1895, handed to witness: "Q. Mr. Lannert, what is the first item in that inventory? A. 523,384 feet of four quarter white pine edge. Q. In what manner did you make up that item? A. Why I counted the courses, took the rule and measured across the course and figured it together, the courses and number of feet and added it up and it fetched that item. Q. Now you may state to the jury just how you reached that first item of 523,000 of white pine, how you got it and where you got it from and all about it? A. I counted the courses ; this lumber is piled, there is so many feet in the course and a board throwed across in front and one back, and then it is piled up there as high as you can pile it and of course we took a lumber rule, a lumber rule that gives the number of feet when you put it on that board, how much in that board, and I counted the course across, the number of feet in each course and multiplied with the courses clean up will fetch this here amount of feet of lumber in the edge. Q. You have already stated that you have made that paper on the 28th of October, 1895? A. Yes, sir. Q. And that you made it from original memoranda made by yourselves? A. Yes, sir. Q. Does that paper correctly represent the amount of lumber on the yard of Frederick Kreamer at Dauphin on the 28th of October, 1895 as measured by you? A. Yes, sir."

Mr. Snodgrass : " Q. How could you tell whether the pile was exactly the same as it was before without counting it or measuring it? A. Why, we didn't take any off of it. Q. How do you know that? A. Because nobody touched the pile unless I said so."

Mr. McCormick: May it please the court, the counsel for plaintiff now offer the original inventory of October 28, 1895, identified by the witness on the stand, for the purpose, first, of

refreshing the memory of the witness as to the quantity of lumber on the yard of Frederick Kreamer on October 28, 1895; to be followed by evidence of the quantity shipped between October 28, and October 31, the latter being the date of the fire; and it is also proposed to offer the inventory itself in evidence, after the conclusion of the testimony of the witness, to be followed by evidence of the inventory of September, 1895, and the inventory of January 1, 1895, all for the purpose of showing the quantity of lumber upon the yard destroyed by fire and covered by the policy of the defendant.

The Court (to the witness): "Q. If you did not have that paper at all could you give us any accurate recollection about the piles in the yard and how much they contained? A. No, sir; I couldn't do that, because that would be impossible; the number of feet is here. Q. Even after you have seen the paper, with the paper in your hands, are you able to tell us from your memory what any pile contained. A. What each pile contained? No, sir; that would be impossible. Q. Could you tell from your recollection, even after looking at the paper, how much was the aggregate of any one kind of lumber in the yard? A. Yes, sir; with the paper of course. Q. What I mean is, have you any memory on the subject outside of the paper? A. No, sir. Q. Have you any memory on the subject? A. No, sir; not exactly."

Mr. McCormick: "Q. Do I understand you to say that you have no recollection about this lumber except as you find it on the paper, or have you a general recollection of it? A. In some of it, just as I explained a while ago, just two or three piles; of course this was done at that time and I have not seen that paper since and didn't pay any attention to it, because I took the inventory, that is what I got paid for, and handed it over and they got the inventory since, a year ago last October."

The Court: I think in that state of the witness's mind it could not be said that he was testifying from his memory after looking at his paper.

Mr. McCormick: Then, may it please the court, we offer the paper.

Mr. Snodgrass: We object to that for the reason that it is not such an inventory as would be admissible in a case of this

kind; it is simply a lumping inventory without giving any details at all.

The Court: I have very little doubt about the admissibility of this inventory. From the necessity of the case in transactions of the class to which this belongs we think a paper made as this was is infinitely superior to the unassisted recollection of the witness; the value of the paper is, of course, a matter to be determined by the jury in connection with all the testimony now in and hereafter to be given in the case; the paper is admissible. Exception to the defendant.

Inventory taken October 28, 1895, of lumber on the Dauphin yard read to jury, as follows:

| | | | | | |
|---|---|---|---|---|---:|
| 523,384 | ft. | 4–4 | W. | Pine Edge | |
| 130,039 | " | 1×12 | W. | Pine | |
| 45,808 | " | 1×10 | " | " | |
| 23,626 | " | 5–4 | " | " | |
| 32,441 | " | 6–4 | " | " | |
| 5,128 | " | 8–4 | " | " | 760,426 |
| 18,335 | " | 1×12–14 | Hem. | | |
| 603,248 | " | " 16 | " | | |
| 226,734 | " | " 18 | " | | |
| 131,780 | " | " 20 | " | | |
| 98,940 | " | 1×10–12 | " | | |
| 147,823 | " | " 14 | " | | |
| 337,352 | " | " 16 | " | | |
| 36,200 | " | " 18 | " | | |
| 35,205 | " | " 20 | " | | |
| 48,769 | " | 1×10 & 1×12 Culls | | | |
| 27,351 | " | 8 & 10 ft. Hem. Bds. | | | 1,711,737 |
| 384,713 | " | 1×6–12 & 14 Hem. | | | |
| 520,442 | " | 1×6–16 | | | |
| 105,857 | " | 1×6–18 & 20 | " | | 1,011,012 |
| 2,788 | " | 2×4–12 | " | | |
| 8,562 | " | " 16 | " | | |
| 27,084 | " | " 18 | " | | |
| 35,064 | " | " 20 | " | | 73,498 |
| 42,876 | " | 4–4 Y. Pine, | | | 42,876 |
| 125,400 | " | " " Oak, | | | 125,400 |
| | | | | | 3,724,949 |

In the above W. Pine there is about 10,000 ft. Mill Culls.

         THEO. LANNERT, Shipper. [1]

Mr. McCormick: Paper purporting to be inventory taken Sep-

tember 2, 1895, shown witness : " Q. Was that paper made by
you. A. Yes, sir. Q. Is it all in your handwriting ? A. Yes,
sir."

Mr. McCormick: Counsel for plaintiff now offers to prove by
the witness that the inventory of the lumber on the yard of
Frederick Kreamer on September 2, 1895, was made by him,
and that at or about the time that said inventory was made he
transcribed from the original count of the lumber the figures
which constitute the inventory referred to ; this for the purpose
of showing, in connection with the testimony already offered,
that certain of the piles included in the inventory of October 28,
1895, were inventoried, counted by the witness in connection
with two other persons on or about September 2, 1895, to prove
the accuracy of the count of the lumber of the piles so counted
in the October inventory, and to be followed by evidence that
the quantity was marked on the piles under the inventory of
September 2, 1895, was compared by the witness with the
recorded quantity at the time they were made in the office of
Frederick Kreamer at the yard.

Mr. Snodgrass : We object to the inventory of September,
because it is a lumping inventory, and the witness, by whom it
has been attempted to prove it, has not shown such knowledge
of the inventory as would make it competent in the case, that
is, a knowledge of the lumber entering into the items which go
to make up the lump sums contained in the inventory,—being
nothing but a series of lump sums, and there being no pretense
that it is a detailed inventory of anything.

The Court: The inventory of September 2, 1895, is essen-
tially of the same character as the inventory of October 28;
it is supported by the same character of testimony and by the
same witnesses, and is admitted. Exception to the defendant.

Inventory taken September 2, 1895, of lumber on the Dauphin
yard.

| | | | | |
|---|---|---|---|---|
| 634,611 | ft. 4-4 Edge | W. Pine | | |
| 219,819 | " 1×12 | W. " | | |
| 69,764 | " 1×10 | " " | | |
| 48,276 | " 5-4 | " " | | |
| 63,347 | " 6-4 | " " | 1,035,817 ft. | |
| 93,786 | " 4-4 | Y. Pine | | |
| 183,183 | " 4-4 | Oak | 276,969 " | |
| | | Amount carried forward, | 1,312,786 " | |

Statement of Facts. [183 Pa

|        |              | Amount brought forward, | 1,312,786 ft. |
|--------|--------------|-------------------------|---------------|
| 43,650 | " 1×12–12    | Hem.                    |               |
| 59,907 | " " " 14     | "                       |               |
| 990,508 | " " " 16    |                         |               |
| 281,058 | " " " 18    | "                       |               |
| 160,702 | " " " 20    | "                       |               |
| 107,642 | " " " ·     | Culls                   |               |
| 6,076  | " 2×4–12     | " "                     |               |
| 26,736 | " 2 " 16     | "                       |               |
| 54,132· | " " " 18    | "                       |               |
| 76,264 | " " " 20     | "                       |               |
| 154,620 | " 1×10–12   | "                       |               |
| 178,312 | " " " 14    | "                       |               |
| 474,128 | " " " 16    | "                       |               |
| 47,520 | ·" " " 18    | "                       |               |
| 64,125 | " " " 20     | "                       |               |
| 18,764 | " " " 12     | " Culls                 |               |
| 407,672 | " 1×6–14    | "                       |               |
| 680,956 | " " " 16 to 20 | "                    |               |
| 29,351 | 8 & 10 ft. Bds. |                      | 3,862,121 "   |
| 230,000 | 4 ft. W. Pine Lath |                   |               |
| 1,320,000 | 4 " Hem.    "  |                       |               |
| 25,000 | 3 " " "         |                         |               |
|        |                |                         | 5,174,907 "   |

THEO. LANNERT, Shipper. [2]

The following facts appeared from the evidence : On November 6, 1894, the appellant issued a policy of fire insurance to the appellee, in the sum of $1,500, for the term of one year, from November 6, 1894, to November 6, 1895, "on lumber, lath and pickets, their own, or held by them in trust, or sold but not delivered, piled in the yard leased by Fred. Kreamer, at Dauphin, Dauphin county, Penna. ; " and that the appellee is a corporation chartered under a special act of assembly, approved March 23, 1872. The logs from which the lumber in controversy was sawed were carried down the river from the Susquehanna boom, at Williamsport, by the flood of May, 1894, and the West Branch Lumberman's Exchange acted as agent and trustee for the numerous owners of such logs. On June 16, 1894, the appellee, acting by Elias Deemer, chairman of the stray log committee, entered into an agreement with one Frederick Kreamer, of Lock Haven, Penna., wherein and whereby Kreamer covenanted and agreed to gather all the logs between Port Trevorton and Green's Dam, on the Susquehanna river, and to erect a saw-

mill and saw the logs into lumber for the said appellee, which agreement further stipulated: "The lumber to be kept fully insured for the West Branch Lumberman's Exchange as owner, but the cost of insurance shall be paid by said Kreamer. In case said Kreamer neglects or refuses to insure said lumber, or insures for a less amount than the owner deems necessary, said Kreamer agrees to pay any such insurance as may be paid by such Exchange."

The appellee agreed to pay the said Kreamer for the work of so manufacturing the lumber as follows: "For the work so done by said Kreamer, the said West Branch Lumberman's Exchange agrees, when it has realized from said lumber net, after paying all expenses attending the sale and handling same, a sum of money equal to ten dollars and twenty-five cents per thousand feet for white pine, cherry, ash and cucumber; five dollars and ten cents per thousand feet for the oak and yellow pine, and three dollars and five cents per thousand feet for hemlock and all other woods, by the scale of the logs as hereinbefore provided, then the said West Branch Lumberman's Exchange will transfer to said Kreamer such lumber as may remain, if any, and said Kreamer will then receipt for same in full satisfaction of all work and other services to be performed under this agreement. . . . The work shall at all times be under the supervision and direction of the stray log committee of the West Branch Lumberman's Exchange, and in case the work is not pushed forward to the satisfaction of the committee, or is improperly done, they shall have the right to take possession of said logs and the mill and piling ground of said Kreamer, without let or hindrance, and without liability to said Kreamer, except reasonable compensation for the use thereof in the manufacture of said logs."

On June 23, 1894, Frederick Kreamer leased the land upon which the lumber, etc., was piled, from John Q. Fertig, which lease was, on October 9, 1894, before the date of the policy in suit, assigned to the appellee.

On October 9, 1894, a supplemental agreement was entered into between the appellee and Frederick Kreamer, by which it was agreed that Kreamer might from time to time ship lumber of the appellee from the Dauphin yard, not in the aggregate to exceed one million feet.

On May 18, 1895, August 2, 1895, and September 21, 1895, permission was given by letters to Kreamer to ship lumber of the appellee from the Dauphin yard, not exceeding in the aggregate six million five hundred thousand feet, which entire amount of lumber, which the said appellee, by the said agreement and letters, gave permission to ship, had, in fact, all been shipped previous to the fire.

In pursuance of the contracts between the parties, Kreamer erected a mill at Dauphin and manufactured the logs of the appellee into lumber. The total amount manufactured was between eleven and twelve million feet, consisting of pine, hemlock and hard wood. On this amount there was at the time of the fire upon the yard in the neighborhood of three million seven hundred thousand feet, of about the value of $44,000. The entire amount of insurance placed by or for the appellee was $40,000, distributed in a large number of companies, by policies dated during the years 1894 and 1895. In June and July, 1895, Frederick Kreamer, without the knowledge or consent of the appellee placed $10,000 of insurance on property described as follows : " On lumber of every description, including lath, shingles and pickets, their own or held by them in trust or sold but not delivered, on ground leased from John Q. Fertig, situate at Dauphin, Dauphin Co."

The property insured was destroyed by fire on October 31, 1895, between 11 and 12 o'clock in the morning. On December 16, 1895, proofs of loss were sent to all the insurance companies.

The court charged in part as follows:

There are only the two questions of fact to be submitted for your consideration, namely the quantity and the value of the lumber destroyed by fire on the Kreamer yard at Dauphin. You know, of course, how that lumber got there. During the 1894 flood in the river, the Williamsport boom broke and a large number of logs floated down the stream and were stranded at various points along the shore and upon the islands. The plaintiff, the West Branch Lumberman's Exchange, acting as agent or trustee—representing at all events in some capacity the owners of these logs—undertook to dispose of them for the owners ; and after an unsuccessful attempt to make sale of the logs over

this particular part of the river, it finally entered into an agreement with Frederick Kreamer by which he was to collect and saw a certain quantity. [The construction of that contract is for the court, and we instruct you that under it the lumberman's exchange did not sell these logs to Frederick Kreamer, and that the interest which the exchange had in the logs was sufficient to support an insurance upon them to their full value.] [9] If it should turn out that somebody else has a claim upon the proceeds, or upon any part of the proceeds, of these insurance policies, that matter can of course be adjusted hereafter in some other proceeding. [We instruct you, for the purpose of this case, that the lumberman's exchange had a right to insure this lumber upon the yard at Dauphin to its full value, and has a right to recover now upon this policy the fair proportion of the actual cash value of the lumber as it was upon the yard at the time of the fire.] [10]

There is one other question in the case also, a question of law, about which I need not trouble you more than to say that it concerns the $10,000 of policies taken out by Frederick Kreamer. It is possible that they may be contributing policies; I have no opinion to express now upon that question; whether they are or are not is, at all events, a question of law upon the undisputed evidence in the case, and I will ask you in a few moments to put your verdict in such a shape that it may be determined finally hereafter.

Defendant's points and answers thereto among others were as follows :

1. The policy in suit having been made and accepted on the following express stipulation and condition, forming a part of the consideration thereof, to wit: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein, or if the interest of the insured be other than unconditional and sole ownership." And the evidence showing that prior to taking out this policy the plaintiff had sold and delivered the property described in said policy to one Frederick Kreamer, and the interest of said plaintiff therein not being truly stated in said policy; said policy was and is void by its express terms, and plaintiff cannot recover therein in this suit. *Answer :* Refused. [3]

2. The policy in suit having been made and accepted on the following express stipulation and condition, forming a part of the consideration thereof, to wit: "If fire occur the insured shall give immediate notice of any loss thereby in writing to this company . . . . and within sixty days after the fire . . . . shall render a statement to this company, signed and sworn to by said insured, stating the . . . . interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy;" and it being further expressly stipulated by said policy that "the loss shall not become payable until sixty days after the notice . . . . and satisfactory proof of the loss herein required have been received by this company;" and the undisputed evidence showing that the statement or proof of loss rendered by the plaintiff to the defendant company was not such as is required by the terms of the policy above cited, and especially in respect to the interest of the insured and of all others in the property; cash value of each item thereof, etc.; all other insurance thereon, etc.; changes in title, use, location, possession, etc., of said property, since the issuing of the policy, etc.; and was not accepted by said defendant company as satisfactory, but was objected to and the defects therein and omissions therefrom specifically set out by said company; all of which said plaintiff had due notice, but without properly amending said proof of loss as required by said company;—the plaintiff has no right or cause of action under said policy and cannot recover in this suit. *Answer:* Refused. [4]

3. That the contract of June 16, 1894, between the West Branch Lumberman's Exchange and Frederick Kreamer, is a contract of sale, under which, for the purpose of this case, the title to the logs in question passed to the said Frederick Kreamer. *Answer:* Refused. [5]

4. That under the said contract of June 16, 1894, the insurable interest of the West Branch Lumberman's Exchange, either as owner or trustee, in the lumber which was the subject of insurance, was the amount which would become due to it there-

under, estimated on the basis of the scalement and the prices fixed by the contract for the several kinds of lumber mentioned. *Answer:* Refused. [6]

5. That under said contract of June 16, 1894, the sum that can be recovered in this suit by the West Branch Lumberman's Exchange, either as owner or trustee, for the destruction of the lumber which was the subject of insurance, is the balance of purchase money due to the West Branch Lumberman's Exchange by Frederick Kreamer upon said contract at the time of the fire. *Answer:* Refused. [7]

6. That all the policies of insurance referred to in proof of loss, being upon the same subject, the same risk and the same interest, are contributing policies; to be considered together, making but one policy; and therefore the verdict should be for the proportion that $1,500, the amount of the policy in suit, bears to $40,000, the total insurance, upon a loss measured by the amount which the jury shall find was due by Frederick Kreamer to the plaintiff under the contract of June 16, 1894, at the time of the fire. *Answer:* Refused. [8]

7. That if, in the opinion of the court, the plaintiff be entitled to recover for the entire value of the lumber destroyed, then, and in such case, all the policies of insurance upon the lumber in question, including the $10,000 standing in the name of Frederick Kreamer, must contribute ratably to the payment of such loss, and the verdict should be for the proportion which $1,500, the amount of the policy in suit, bears to $50,000, the entire insurance, upon such loss as the jury shall find to have been suffered by the plaintiff by the destruction of the lumber in question. *Answer:* We reserve this point. Upon the policies for $10,000, taken out by Frederick Kreamer, upon the agreements between Kreamer and the Exchange, and upon the undisputed testimony of Mr. Coleman, that the Exchange did not know of this insurance until after the fire and had not consented to it,—whether this insurance ought to contribute to the loss. [11, 12]

Plaintiff's points reserved in connection with said reservation were as follows:

7. The plaintiff is entitled to recover that proportion of the actual value of the property destroyed which $1,500 bears to $40,000, the total amount of plaintiff's insurance upon said

property, or in other words $\frac{15}{400}$ parts of the actual cash value of the lumber destroyed by fire with interest from February 16, 1896.

8. If the jury shall find that the actual cash value of the lumber destroyed was $40,000 or more, the plaintiff is entitled to recover the full amount of the policy sued upon with interest from February 16, 1896, to date.

Verdict for plaintiff for $1,590, subject to reduction if the court should be of opinion that the Kreamer insurance ought to contribute to the loss. Judgment was subsequently entered upon the verdict and upon the reserved question in favor of the plaintiff.

*Errors assigned* were (1, 2) rulings on evidence; (3, 12) above instructions, quoting them.

*Robert Snodgrass* and *Andrew A. Leiser*, for appellant.—There is a limit to the amount for which a book entry will be received in evidence: Corr v. Sellers, 100 Pa. 169; Shoemaker v. Kellog, 11 Pa. 310; Stuckslager v. Neel, 123 Pa. 53; Forsythe v. Norcross, 5 Watts, 432; Thomson v. McKelvey, 13 S. & R. 126.

It is a common provision of insurance contracts that if the insured be not the sole and unconditional owner of the property insured, or if there be any other person interested therein the fact must be represented to the company, and in default of making such disclosure it is provided that no liability shall exist as to the insurer. Sometimes the contract is conditional, to be valid only where the insured has a fee simple title. Whatever may be the requirement of the policy in these particulars substantial compliance is indispensable: Ostrander on Ins. (2d ed.) sec. 60, p. 210; Waller v. Northern Assur. Co., 10 Fed. Rep. 232; Richards on Ins. p. 142; Diffenbaugh v. Ins. Co., 150 Pa. 270; Reithmueller v. Fire Assn. of Phila., 2 West. Rep. 562; Clay F. & M. Ins. Co. v. Huron Salt & L. M. Co., 31 Mich. 346; Richards on Ins. p. 153; Grigsby v. German Ins. Co., 40 Mo. App. 276; Lasher v. Ins. Co., 86 N. Y. 423; Mers v. Ins. Co., 68 Mo. 127; Syndicate Ins. Co. v. Bohn, 65 Fed. Rep. 165; Schroedel v. Humboldt Fire Ins. Co., 158 Pa. 459; Pottsville Ins. Co. v. Fromm, 100 Pa. 347; Swan v. Watertown F. Ins. Co., 96 Pa. 37.

The exchange having disclaimed any interest in Kreamer is now estopped from asserting such interest as an element of recovery in this suit: Campbell v. Charter Oak F. & M. Ins. Co., 10 Allen, 213.

The contention of the defendant is that this contract was a contract of sale, by which the title to the logs in question passed to Kreamer, and that consequently the insurable interest of the plaintiff in the lumber destroyed and the amount which it is entitled to recover are measured by the balance of purchase money due the Exchange under the contract, apportioned ratably among the policies, representing the entire insurance of $40,000 : Bretz v. Diehl, 117 Pa. 589 ; Norton v. Woodruff, 2 N. Y. 153 ; Butterfield v. Lathrop, 71 Pa. 226 ; Jenkins v. Eichleberger, 4 Watts, 121 ; Prichett v. Cook, 62 Pa. 193 ; Brunswick & Balke Co. v. Hoover, 95 Pa. 508 ; Forrest v. Nelson, 108 Pa. 481 ; Farquhar v. McAlevy, 142 Pa. 233 ; Ott v. Sweatman, 166 Pa. 217 ; Westphal v. Sipe, 62 Ill. App. 111.

A contract of insurance is a purely personal engagement and does not move with the property insured : Continental Ins. Co. v. Munns, 120 Ind. 30 ; Cummings v. Cheshire County Mutual Fire Ins. Co., 55 N. H. 457 ; Hone v. Mutual Safety Ins. Co., 1 Sandf. 137 ; Richards on Ins. sec. 33 ; McCluskey v. Prov. Wash. Ins. Co., 126 Mass. 306 ; Howard v. Albany Ins. Co., 3 Denio, 301 ; Carpenter v. Prov. Wash. Ins. Co., 16 Peters, 495 ; Biddle on Ins. sec. 202 ; Hall v. Niagara F. Ins. Co., 93 Mich. 184 ; McDonald v. Black, 20 Ohio, 185 ; Lett v. Guardian F. Ins. Co., 125 N. Y. 82 ; Farmer's Mut. Ins. Co. v. New Holland Turnpike Co., 122 Pa. 37 ; Grevemeyer v. Ins. Co., 62 Pa. 340 ; Sweeny v. Franklin F. Ins. Co., 20 Pa. 337.

The title to the lumber destroyed was shown to be in Kreamer, and the relation of debtor and creditor was established. Tested by the rule that he who has no interest can have no insurance, the Exchange's interest in the property destroyed, and for which it can recover, is measured by the sum due to it upon the lumber that was burned: Tyler v. Ætna F. Insurance Co., 12 Wendell, 507 ; Carpenter v. Prov. Wash. Ins. Co., 16 Peters, 495 ; Wood v. Ins. Co., 46 N. Y. 421 ; Mut. F. Ins. Co. v. Updegraff, 21 Pa. 513 ; Stuart v. Ins. Co., 2 Cranch, 442 ; Hawley v. Ins. Co., 102 Cal. 651 ; 1st Nat. Bank of Waxahachie v. Lanc. Ins. Co., 62 Tex. 461.

If however we accept the plaintiff's construction of the contract that Kreamer was simply the agent, bailee or factor of the Exchange, he had the right to insure the lumber, and such insurance inures for the benefit of the Exchange and there must be contribution: 1 Biddle on Ins. sec. 171; O'Connor v. Imperial Ins. Co., 14 L. Can. J. 219; Kline v. Queen Ins. Co., 7 Hun, 267; Bobbitt v. Lon. & Liv. & Globe Ins. Co., 66 N. C. 70; Sheppard v. Peabody Ins. Co., 21 W. Va. 368; Stillwell v. Staples, 19 N. Y. 401; Hooper v. Robinson, 8 Ins. L. J. 497; Waring v. Indemnity F. Ins., 45 N. Y. 606; De Forest v. Fulton F. Ins. Co., 1 Hall, 84; Sturm v. Atlantic Mut. Ins. Co., 63 N. Y. 77; Shoenfeld v. Fleisher, 73 Ill. 404; Castner v. Farmers' Mut. F. Ins. Co., 46 Mich. 15; California Ins. Co. v. Union Compress Co., 133 U. S. 387; Home Ins. Co. v. Balt. Warehouse Co., 93 U. S. 527; Hough v. People's F. Ins. Co., 36 Md. 398; Phœnix Ins. Co. v. Favorite, 49 Ill. 259; Lucas v. Ins. Co., 23 W. Va. 258; Snow v. Carr, 61 Ala. 363; Ætna Ins. Co. v. Jackson, 16 Ben Monroe, 242; Roberts v. Firemen's Ins. Co., 165 Pa. 55; Siter v. Morrs, 13 Pa. 218.

· *Henry C. McCormick,* with him *M. E. Olmsted* and *Seth T. McCormick,* for appellee.—The inventories were properly admitted: Allegheny Ins. Co. v. O'Hanlon, 1 Walker, 359.

A policy of insurance taken out by warehouse keepers, against loss or damage by fire on "merchandise, their own or held by them in trust, or in which they have an interest or liability, contained in" a designated warehouse, covers the merchandise itself, and not merely the interest or claim of the warehouse keepers.

If the merchandise be destroyed by fire, the assured may recover its entire value, not exceeding the sum insured, holding the remainder of the amount recovered, after satisfying their own loss as trustees for the owners: Home Ins. Co. v. Balto. Warehouse Co., 93 U. S. 527; Pitts. Storage Co. v. Ins. Co., 168 Pa. 522; West & Atlantic Pipe Lines Co. v. Home Ins. Co., 145 Pa. 347; 2 Beach on Ins. p. 310, secs. 874–5; Berry v. Am. Cent. Ins. Co., 132 N. Y. 49; Riggs v. Ins. Co., 125 N. Y. 7; Steele v. Ins. Co., 17 Pa. 290; Harris v. Ins. Co., 50 Pa. 341; Thomas v. Cummiskey, 108 Pa. 354; Stillwell v

Staples, 19 N. Y. 401; Fire Ins. Assn. v. Merchants & Miners Trans. Co., 6 Cent. Rep. 437; Miltenberger v. Beacom, 9 Pa. 198; Ins. Co. v. Updegraff, 21 Pa. 513; Welsh v. Assurance Corp., 151 Pa. 607; Johnson v. Campbell, 120 Mass. 449; Waring v. Fire Ins. Co., 45 N. Y. 606; California Ins. Co. v. Union Compress Co., 133 U. S. 387; Roberts v. Ins. Co., 165 Pa. 55; Walter v. Sun Fire Office, 165 Pa. 381; Kronk v. Ins. Co., 91 Pa. 300; Norcross v. Ins. Co., 17 Pa. 429; 7 Am. & Eng. Ency. of Law, 1020; Grandin v. Ins. Co., 107 Pa. 26.

Double insurance takes place when the assured makes two or more insurances, either simultaneous or successive, on the same subject, the same risk and the same interest: Clarke v. Western Assurance Co., 146 Pa. 561.

The Kreamer policy, in addition to covering what was covered by the exchange policy, covered shingles as well. This brings it fairly within the case of Clarke v. Assurance Co., 146 Pa. 561; Royal Ins. Co. v. Roedel, 78 Pa. 19; Wells v. Phila. Ins. Co., 9 S. & R. 103; Wood on Fire Ins. 596.

OPINION BY MR. JUSTICE McCOLLUM, January 3, 1898:

We discover no error in the rulings complained of in the first and second assignments. They are in exact accord with the decision of this court in Allegheny Insurance Co. v. O'Hanlon, 1 Walker, 359. In that case an inventory of goods totally destroyed was admitted, in connection with the testimony of the parties who made it, as tending to show the amount and value thereof. This is precisely what was done in the case at bar. The inventories of September 2 and October 28, 1895, were made by persons of large experience in the lumber business, and for the purpose of ascertaining the amount of lumber in the yard when each inventory was taken. They were based on estimates of the lumber in piles. The method of estimating it was that usually employed by lumbermen and the only practicable method of ascertaining the amount of lumber piled in the yard. Every grade and size of lumber piled there was inventoried separately. The manner of making the inventories was fully explained by the persons who made them, and the inventories, in connection with their testimony, were clearly competent for the purpose for which they were offered and admitted.

The third and fourth assignments relate to the refusal of the

court to affirm the defendant's first and second points. The points denied the liability of the defendant to the plaintiff in the suit and called for an instruction that the latter could not recover anything in it. The first point appears to be based on an alleged violation of the condition in the policy in regard to the ownership of the property insured, and the second point seems to be founded upon alleged defects in the proofs of loss. A sufficient answer to the first point is that the policy was issued to the insured " on lumber, lath and pickets, their own, or held by them in trust, or on commission, or sold but not delivered, piled in the yard leased by Fred. Kreamer at Dauphin, Dauphin county, Penna.," and that the plaintiff had not parted with its interest in or title to any portion of the property covered by the policy at the time of the fire. The insurance was not limited to property of which the plaintiff was the sole and unconditional owner. It included property held in trust or on commission or sold but not delivered. Besides, the part of the policy quoted above is in writing and must prevail against the printed stipulations or conditions in conflict with it: Grandin v. Insurance Co., 107 Pa. 26. In answer to the second point we may say that the supplemental proof furnishes in detail the circumstances in connection with the collection and conversion of the logs into lumber under the contract with Kreamer, and it asserts that said contract was shown to the adjusters representing the defendant and other companies, and that a copy of it was furnished to them. It also appears by the defendant's "renewed objections to proof," that a copy of the contract was in its hands. In view of these facts there is no force in the defendant's contention that the plaintiff's assertion and proof of title were defective.

The questions raised by the fifth, sixth, seventh, eighth, ninth and tenth assignments relate to the effect of the contract between the plaintiff and Kreamer upon the measure of the defendant's liability in this suit. The defendant's contention is that under and by force of this contract the title to the logs passed to Kreamer, and consequently the plaintiff's insurable interest is measured by the balance of the purchase money due under it. This is a construction of the contract to which we cannot assent. It was not intended to, and it did not, transfer the ownership of the logs to Kreamer. " He was employed by

the plaintiff to saw its logs into lumber, and for this purpose was entrusted with possession of the property." The work he was employed to do was at all times under the supervision and direction of the plaintiff's representatives who were authorized by the contract to take possession of the logs and mill in case the work was not being pushed forward satisfactorily or was improperly done. It required a supplemental agreement to authorize Kreamer to ship or sell the lumber, and for this purpose shipping orders were given from time to time. The lumber was to be kept fully insured for plaintiff "as owner." The contract was nothing more than an employment of Kreamer to do the work specified with a promise to compensate him for it in the manner stated therein. Certainly, as between the plaintiff and Kreamer, there was no transfer of the former's interest in the logs to the latter. The defendant concedes that as "between the parties the contract upon its face would probably be held to be a bailment." If this were so the defendant is not in a position to challenge the plaintiff's title. It is only to prevent a fraud on creditors that a contract on its face a bailment is held to be a sale. It has been expressly decided in Burson v. Fire Association of Phila., 136 Pa. 267, that an insurance company in writing a policy does not thereby become a creditor, that it has no standing to assert that the transaction is a legal fraud; that where it is good between the parties it is good against all the world except creditors intended to be defrauded.

To the defendant's contention that the policies taken out in the name of Kreamer should contribute to the loss, it is sufficient to say that these policies and the one in suit are not upon the same subjects, and therefore not double insurance. "Double insurance takes place when the assured makes two or more insurances, either simultaneous or successive, on the same subject, the same risk and the same interest:" Clarke v. Western Assurance Co., 146 Pa. 561. The subjects insured in the Kreamer policies were "lumber of every discription, including lath, shingles and pickets, their own or held by them in trust, or sold but not delivered, on ground leased from John Q. Fertig, situate at Dauphin, Dauphin Co." The policy in suit was "on lumber, lath and pickets, their own or held by them in trust or on commission, or sold but not delivered, piled in the yard leased by Fred. Kreamer at Dauphin, Dauphin Co., Penna." Had the

term " lumber " alone been used it would no doubt have included the other items as it would have been understood then in its broadest acceptation. But when lath and pickets are enumerated with the lumber the latter word must be understood in its more restricted sense of sawed boards or logs. It is not consistent with the enumeration contained in the policy in suit that the term " lumber " should include shingles. If the parties had so understood, it would also have included lath and pickets, and these latter terms would not have been used. It follows that as the amount insured in the Kreamer policies is not apportioned among the subjects named, the amount of insurance to be placed on the shingles is not known, and the amount on the remaining subjects duplicated in the other policies is not capable of adjustment as double insurance. To what has been said on this branch of the case we may add that the undisputed evidence shows that the plaintiff did not know of the Kreamer insurance until after the fire, nor consent to it at any time. The policy in suit was not, therefore, affected by it. See Wood on Fire Insurance, section 352. The assignments are overruled.

Judgment affirmed.