**AUTOMOBILE INS. CO. OF HARTFORD, CONN., v. SPRINGFIELD DYEING CO., Inc.**

**No. 7096.**

Circuit Court of Appeals, Third Circuit.

Feb. 2, 1940.

Rawle & Henderson, of Philadelphia, Pa. (Joseph W. Henderson and Thomas F. Mount, both of Philadelphia, Pa., of counsel), for appellant.

Paul D. Compton, of New York City, and Shields, Clark, Brown & McCown, of Philadelphia, Pa. (S. B. Fortenbaugh, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before BIDDLE, JONES, and BUFFINGTON, Circuit Judges.

JONES, Circuit Judge.

On April 1, 1937, Automobile Insurance Company of Hartford, the appellant, issued its "Bailees' Customers Policy" in the principal sum of $20,000 to Springfield Dyeing Company, Inc., the appellee. Springfield was a dyer and finisher of silk or silk products belonging to others; and ninety-eight per cent. of its business came from Roxborough Knitting Mills, Inc., a manufacturer of silk hosiery.

The policy insured Springfield "for account of whom it may concern, on all kinds of lawful goods and/or articles * * * being the property of its customers while in possession of the Assured * * * against direct loss or damage to such goods and/or articles while this policy is in force, by the perils specifically insured against". The goods or articles were described by the policy as "consisting principally of hosiery accepted by the assured for * * * dyeing, or finishing, the property of its customers, * * * and while being transported by private or public conveyance to and from its customers", etc. Among the perils insured against were "Theft, Burglary and Hold-up". The policy specified that it did not insure against,—"Loss, if, at the time of the loss or damage, there be any other insurance covering against risks assumed by this policy which would attach if this insurance had not been effected."

A further condition of the policy provided in material part with respect to other insurance, as follows: " * * * if at the time of loss or damage there be other insurance (whether collectible or uncollectible) on the damaged or destroyed goods covering against any one hazard or combination of hazards assumed by this policy, then this policy will not indemnify for such loss or damage until such other insurance (whether collectible or uncollectible) shall have been exhausted, and then shall cover only the excess over such other insurance (whether collectible or uncollectible)."

As of June 1, 1937, Roxborough took out a policy of insurance in the Westchester Fire Insurance Company of New York in the principal sum of $10,000 on merchandise of Roxborough against loss or damage thereto from burglary, hold-up or theft while in transit. In the usual conduct of its business, Roxborough had considerable goods in transit as it had knitting done at thirty-five to forty outside mills to which it shipped its silk and cotton.

Roxborough's policy with Westchester provided "that this insurance shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly, covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance". The policy also contained a similar provision with respect to payment of losses where there was such other insurance. The coverage under the Westchester policy was extended by endorsement of July 16, 1937 to merchandise of Roxborough while in transit in "trucks of any dyer, finisher, throwster, converter, weaver or similar custodian", etc., against "all loss or damage of whatsoever kind or nature from any physical and/or external cause". Roxborough warranted in the endorsement that

"in the event of loss the Assured shall proceed with full claim against the custodian". The endorsement further provided that, "In the event that the custodian for any reason is unable to pay the full loss within sixty days from date of same the assured shall be protected under this contract for said loss up to not exceeding the amounts stipulated * * *".

On October 26, 1937, both policies then being in force, a truck belonging to Springfield and under the control of its employees, while engaged in transporting a load of unfinished hosiery, the property of Roxborough, to Springfield's place of business for dyeing and finishing by the latter, was held up by armed highwaymen who stole the truck's entire cargo of hosiery. The value of the stolen hosiery, to the extent that the same remained unrecovered, was $11,073.59, for which amount Springfield made claim under its policy.

Automobile Insurance, contending that it was not liable to Springfield under its policy for the whole of the loss but only so much thereof as was in excess of Roxborough's insurance for loss or damage to its goods from the same risk, refused to pay Springfield's claim for the damage in full; hence, this suit, which was tried to the court below without a jury.

At the trial, the facts and documentary evidence to which we have referred were stated by the parties without objection or dispute. Springfield also proved, and the trial court found as a fact, that "By oral contract with Roxborough Knitting Mills, Inc., the plaintiff [Springfield] agreed to be responsible to Roxborough for any loss occurring to Roxborough's merchandise while in the possession of the plaintiff, and to maintain insurance upon the said merchandise for any loss". The evidence further showed that the agreement between Springfield and Roxborough was entered into when Springfield first solicited business from Roxborough shortly prior to the issuance of the policy by Automobile Insurance to Springfield.

It was also stipulated that, more than sixty days after the loss, Westchester loaned to Roxborough, as evidenced by loan receipt dated January 24, 1938, $10,873.88, without interest, to be "repayable only out of any net recovery [Roxborough] may make from any carrier, bailee or others upon or by reason of any claim for loss or damage to the property described * * *

or from any insurance effected by any carrier, bailee or others on said property"; and, "as security for such repayment" Roxborough pledged to Westchester "all such claims and any recovery thereon". The property described was the "certain lot of hosiery, upon which loss and damage has been determined at $10,873.88" due to the theft from the truck of Springfield.

The court below rejected the defendant's contention and entered judgment for Springfield for the full amount of its claim with interest. We entertain no doubt as to the correctness of the court's action.

The policy in suit is a "Bailees' Customers Policy" and is so labelled by the insurer. By its plain terms it insured Springfield against loss or damage to goods belonging to its customers while in its possession. The policy contains no suggestion that the protection thereunder was limited to some qualified or partial interest because the insured was a bailee. Springfield had an insurable interest in the hosiery for the full value thereof up to the face amount of the policy and that is what appellant insured. California Insurance Co. v. Union Compress Co., 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730; Phœnix Insurance Co. v. Erie & W. Transportation Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Home Insurance Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868; Munich Assurance Co. v. Dodwell & Co., 9 Cir., 128 F. 410; Roberts, Trustee, v. Firemen's Insurance Co., 165 Pa. 55, 30 A. 450, 44 Am.St. Rep. 642; and Siter v. Morrs, 13 Pa. 218.

Springfield's agreement with Roxborough to be absolutely responsible for the latter's property and to keep the goods fully insured for such purpose served to confirm the bailee's insurable interest in the property. In Western & A. Pipe Lines v. Home Insurance Co., 145 Pa. 346, at pages 361 and 362, 22 A. 665, 667, 27 Am.St.Rep. 703, the court said,—"According to the contract made with its [bailee's] customers, it was bound to protect, by insurance, the oil in its tanks at its own expense. In case of destruction by fire without insurance, it would have been bound to its customers to make good the loss. To the extent of the value of the oil, therefore, it [the bailee] certainly had an insurable interest, and, in a certain sense, was at least quasi owner of the oil." The materiality of the agreement between Springfield and Roxborough in such connection is apparent. The exist-

ence of the agreement is an established fact in the case. The finding of the trial court with respect thereto is supported by competent evidence; and no error appears. Rule 52, Rules of Civil Procedure 28 U.S. C.A. following section 723c. While the Rules were not in force when the action was instituted, they were applicable to the trial of the case, the court not having concluded that their application would not be feasible or would work an injustice. Hoffman v. New Jersey Federation of Y. M. & Y. W. H. A., 3 Cir., 106 F.2d 204.

■■■ The policy in suit, when issued by appellant, constituted primary insurance in favor of Springfield on the goods of Roxborough while in the possession of Springfield. Such, thereafter, it continued to be unless the policy later taken out by Roxborough worked a change in the contractual obligations of Automobile Insurance. It is indisputable that, had Roxborough not taken out the Westchester policy on its goods generally while in transit, appellant would have been without the defense which it now asserts to Springfield's claim. Consequently, appellant argues that the provision in its policy excluding it from liability for loss, if, at the time of the loss, there be any other insurance covering against risks assumed by appellant's policy, was intended to include insurance taken out by others than the insured named in appellant's policy, and that, therefore, appellant was liable only for the excess of loss over the other insurance taken out by another. With that contention we are unable to agree.

Certainly, the words of the clause upon which appellant relies do not expressly refer to insurance taken out by others than appellant's insured; and the insurer's present contention rests on no more than its own construction of the clause based on a self-serving inference. It is no less reasonable, however, to infer that the clause was intended to embrace only other insurance taken out by Springfield. In that situation, any doubt or ambiguity is to be resolved in favor of the insured and against the insurer. Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895; American Alliance Ins. Co. v. Brady Transfer & S. Co., 8 Cir., 101 F.2d 144, 147; Brams v. New York Life Insurance Co., 299 Pa. 11, 13, 148 A. 855; and Western & A. Pipe Lines v. Home Insurance Co., supra. In the case of American Alliance Ins. Co. v. Brady Transfer & S. Co., supra, where the "other insurance" clause was as indefinite in its reference as is the clause now under consideration, the Circuit Court of Appeals for the Eighth Circuit held that,—"The term 'other insurance' must, we think, be construed to apply to other insurance by the insured. Any doubt or ambiguity that might exist in this regard must be resolved against the insurer and in favor of the insured." [101 F.2d 147.]

We are of the opinion that the "other insurance" clause in suit referred only to other insurance taken out by the insured named in that policy. Accordingly, the Westchester policy in favor of Roxborough is of no materiality to the question of the appellant's liability. As there is no other insurance in this case within the meaning of the policy, the further provision in appellant's policy with respect to other insurance, which has to do with payment of losses where there is other insurance, is obviously of no present moment.

■■■ On the other hand, if the clause in the policy in suit as to "other insurance" did embrace insurance taken out by others as well as by the insured, appellant's policy was still the primary insurance on the goods while in Springfield's possession; and Roxborough's policy with Westchester continues to be unavailing to appellant in its effort to limit its liability to the excess of loss over the amount of the Westchester policy.

As already stated, the Westchester policy likewise contained a provision with respect to "other insurance". But, unlike the clause in the policy in suit, the Westchester provision did not leave to inference the "other insurance" to which it referred. It expressly provides that that policy "shall not cover to the extent of any other insurance whether prior or subsequent [thereto] in date, and by *whomsoever effected,* directly or indirectly", etc. (Italics supplied). Consequently, when Westchester issued its policy to Roxborough, containing the provision which we have just quoted, that policy did not attach to the goods of Roxborough while in Springfield's possession for there was already other insurance on such goods under appellant's policy in favor of Springfield. That such was the effect of the provision in the Westchester policy is confirmed by the decision of the Circuit Court of Appeals for the Second

Circuit, construing an identical provision, in the case of Gutner v. Switzerland General Ins. Co. of Zurich, 32 F.2d 700.

Appellant's argument ignores a material fact in the case which is not open to dispute. Its policy attached prior to the issuance of the Westchester policy. And, time of policy issuance is not unimportant in determining the liability of respective insurers. Moore v. Farmers' Mutual Fire Insurance Co., 45 Pa.Super. 541. Nor can the subsequence of the issuance of the Westchester policy be overthrown by the provision in appellant's "other insurance" clause which seeks to draw in insurance of others "which would attach if this insurance [appellant's] had not been effected". To give that provision the effect which appellant's contention requires would be to visit upon the insured a condition contrary to the actual fact, namely, the fact that Springfield's insurance in appellant's company had been effected and had not been displaced by any act of the insured. Appellant may not invoke in relief of its promise a condition subsequent (the Westchester policy) over which its promisee had no control and whereof the latter did not even have knowledge so far as the evidence in the case discloses. Cf. Restatement of Law, Contracts, § 307, p. 453. Springfield's lack of knowledge of any other insurance on the risk against which it carried insurance is pertinent to a just determination of Springfield's rights under its policy. West Branch Lumberman's Exchange v. American Central Insurance Co., 183 Pa. 366, 386, 38 A. 1081.

The result of appellant's contention, if adopted, would be that neither Springfield nor Roxborough could recover under their respective policies for the loss suffered. We have already noted the effect of the "other insurance" provision contained in the Westchester policy. If therefore appellant were relieved of liability except for the excess of its coverage over the Westchester policy, then Westchester, for better reason because of the particularity of its "other insurance" provision, would likewise be relieved of liability except for the excess of the loss over the coverage under appellant's policy, and there would be no primary liability of either company upon which the excess of loss over payment by the other company could be predicated. Such a situation is, of course, rightly avoided when appropriate legal effect is given to the policy in suit and its time of issuance.

This brings us to a consideration of Westchester's loan to Roxborough, which appellant contends was an admission of primary liability by Westchester. Roxborough not having obtained payment for the loss from Springfield within sixty days as specified in the Westchester policy, Westchester advanced to Roxborough without interest a sum equal to the agreed upon loss to be repaid by Roxborough out of any net recovery which it might make from any bailee by reason of the loss or from any insurance effected by a bailee of the property. At the same time Westchester took an assignment of Roxborough's claim against Springfield for which Springfield remained liable to Roxborough under their contract; and there is no reason to believe that Westchester would not press the Roxborough claim against Springfield. Westchester made the loan to Roxborough in order to place its insured in funds because of the loss, while preserving to Westchester its right of subrogation to Roxborough's claim against Springfield. In no sense was the loan an admission of primary liability on the part of Westchester; and it is wholly without effect on the question of ultimate liability as between the respective insurers. The fact that Westchester was prompted to deal fairly with its insured may not be utilized by appellant to escape a liability. The loan receipt, which is in evidence, makes plain its purpose and effect. The transaction was precisely what, under the circumstances, it purported to be, a loan made in a manner which is both legally valid and effective for the purpose. Luckenbach v. W. J. McCahan Sugar Co., 248 U.S. 139, 148, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522; Southern Cotton Oil Co. v. Merchants' & Miners' Transportation Co., D.C., 179 F. 133, 137; Bradley v. Lehigh Valley R. R. Co., 2 Cir., 153 F. 350, 353; Pennsylvania Railroad Co. v. Burr et al., 2 Cir., 130 F. 847, 849, 850.

In Luckenbach v. McCahan Sugar Co., supra, [248 U.S. 139, 39 S.Ct. 55, 63 L.Ed. 170, 1 A.L.R. 1522] where there was a loan by an insurer to its insured of a sum equal to the amount of the loss, Mr. Justice Brandeis, speaking for the Court said,— "Agreements of this nature have been a common practice in business for many years." And in rejecting the argument made there, which appellant makes here, that "the transaction, while in terms a loan, is in substance a payment of insurance", the Supreme Court said that "no good reason appears either for questioning

538

its legality or for denying it effect". As much may rightly be said here.

Appellant's remaining contention, that Springfield violated the policy in suit by admitting liability to Roxborough for the loss, is equally without merit. It was the insured's compromising with others the loss or damage without first obtaining the insurer's consent which the policy inhibited. But that, Springfield did not do. All it did was to affirm its own liability to Roxborough under their contract regardless of the extent of the loss or damage. Moreover, appellant confirmed the amount of the damage which was stipulated below. Thus, appellant did in effect consent to the determination of the amount of the loss or damage.

The judgment of the District Court is affirmed.